## JOSEPH BUSCH

### *v.*

## GEORGE W. HUSTON.

1. LIMITATION — *extent to which a deed is claim and color of title.* Where a party in possession of land, of which his wife is seized, as heir, of an undivided part, takes a quitclaim deed from one of the other heirs who is seized of an undivided fourth thereof, and who simply released and quitclaimed all his right, title and interest, such deed will constitute good color and claim of title to the extent of the grantor's interest, but no further.

2. TAX TITLE — *party bound to pay taxes, cannot avail of title growing out of his neglect of duty.* Where a party in possession of land, under an agreement to pay the taxes for the owner, suffers the land to be sold for taxes, and a third party to acquire a tax deed therefor, and he afterwards acquires such title, he cannot rely upon the same as against the owner or those claiming under him.

3. TENANTS IN COMMON — *husband of one purchasing outstanding incumbrance.* Where the husband of a co-heiress, in possession of land, purchases an outstanding incumbrance or tax title on the lands of the heirs, he will be *held* to have purchased for the benefit of all the tenants in common, upon condition only that they shall contribute their respective portions of the consideration actually paid by him.

4. ADVERSE POSSESSION — *under limitation law of twenty years.* Where a party occupied land as the tenant of the owner until the death of the latter, and after that held possession in right of his wife, who was an heir of the deceased owner, during which he acquired the interest of several of the other heirs, he always recognizing their claims: *Held,* that his possession after the death of the owner was not adverse to the remaining heirs, but in consonance with their rights.

5. SAME — *to show disseizin of co-tenant.* Where one tenant in common is in possession of land, it requires clear and satisfactory proof of a subsequent disseizin of a co-tenant, to characterize his possession as being adverse, so as by lapse of time to bar a right of entry. It is not sufficient that he continues to occupy the premises and appropriates to himself the exclusive rents and profits, makes slight improvements on the land and pays the taxes.

6. To constitute a disseizin there must be outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as, by their own import, to impart information and give notice to the co-tenant that an adverse possession and an actual disseizin are intended to be asserted against him.

APPEAL from the Circuit Court of Mercer county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

Messrs. PEPPER & WILSON, for the appellant.

Mr. ISAAC N. BASSETT, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellee exhibited his bill in chancery against appellant for partition, in the Circuit Court of Mercer county, claiming one-fourth of certain lands described in the bill, as one of the heirs at law of John Dewitt, Sr., deceased. The decree of that court was in conformity with the prayer of the bill, and it is sought by this appeal to procure its reversal upon the ground that appellee is barred by limitation from asserting his claim to the property. It is conceded that John Dewitt, Sr., died intestate on the 6th day of April, 1846, seized in fee simple of the lands in controversy, leaving surviving him, as his only

heirs at law, Benjamin, John, Jr., and Betsey, intermarried with John Shoemaker, his children, and appellee, who is the only child and heir at law of his daughter Jane, who died intestate some time previously, his grandchild..

Appellant claims by purchase and conveyance from the heirs at law of the said John and Betsey Shoemaker. It is not claimed that their title was derived from any one claiming adversely to the title of John Dewitt, Sr., or that appellee has conveyed his interest in the lands, or been deprived of it by judicial process. John Shoemaker was in possession of the lands at and for some time prior to the death of John Dewitt, Sr., under an arrangement which created the relation of land-lord and tenant between them. The possession thus com-menced was continued to be held by him and his heirs, success-ively, until the latter conveyed to appellant. Upon the death of John Dewitt, Sr., Betsey Shoemaker, the wife of John, be-came seized of the undivided fourth of the lands, and the evi-dence clearly shows that no claim was made by them to any other interest in the land than what she thus inherited, until he purchased and received a conveyance from John Dewitt, Jr. The deed from John Dewitt, Jr., to John Shoemaker, is dated April 30, 1851, and purports to remise, release, and forever quitclaim all " the right, title, interest and estate of " John Dewitt, Jr., and wife, in and to the property in controversy, to John Shoemaker. There is no question but that John Shoe-maker paid all taxes assessed on the land, after this deed was executed, and that he received the rents and profits thereof, until his death, and that this was continued by his heirs until they conveyed to appellant.

It is insisted that this deed was good color and claim of title, and that, being made in good faith, and followed by the payment of taxes, the bar is complete under the first section of the limi-tation act of March 2, 1839.

If the deed had purported to convey the lands in controversy, and not merely the interest of the grantor in them, and been

44—75TH ILL.

accepted and acted on in good faith as conveying them, the position would, unquestionably, be correct.

But John Dewitt, Jr., only professed to convey his interest in the property, whatever that was, and this was all that passed by the deed. *May* v. *Le Claire*, 11 Wall. 232; *Edwards* v. *Bishop*, 4 Comst. 64. That interest was his undivided fourth, as one of the heirs at law of John Dewitt, Sr. John Shoemaker did not claim that this deed conveyed full title to the property, for he previously justified his possession by the undivided interest which his wife had in it, and he subsequently recognized Benjamin Dewitt's interest by contracting to purchase it. There is no proof that either John Shoemaker in his lifetime, or his heirs since his death, and prior to their conveyance to appellant, claimed or pretended that the deed from John Dewitt, Jr., was intended to, or that it did, in fact, convey all the interests in the land in controversy. It is impossible to say that a deed is color or claim of title to that of which it is not pretended that it assumes to be a conveyance, or that possession of the whole can be held in good faith, under a deed intended and understood to convey only an undivided part.

Our conclusion is, necessarily, that the deed of John Dewitt, Jr., was good color and claim of title to the extent of his interest, which was the undivided fourth of the property, but no farther.

The deed from Benjamin Dewitt to the heirs at law of John Shoemaker was not executed until the 9th day of November, 1864, and it purports to convey " the undivided share of all his interest " in the lands in controversy, thus explicitly showing that he owned and was conveying but an undivided interest in, and not the whole of the land. It appears that the lands were sold for the non-payment of taxes for the year 1844, and conveyed by the sheriff to John E. Johnston, and that he, on the 24th day of May, 1848, quitclaimed the lands to John Shoemaker; but it is not insisted that Shoemaker ever relied upon this deed as, in fact, conveying any title to him. It is evident that he could

not do so, for two reasons:    1st. The sale was made in consequence of the non-payment of taxes which he was under obligations to have paid by the terms of his agreement with John Dewitt, Sr., by which he held and occupied the premises. 2d. At the time he obtained this title, he was in possession of the property, claiming in right of his wife as one of the heirs at law of John Dewitt, Sr., and the principle is sustained by respectable authority, as well as by reason, that where the husband of a co-heiress purchases an outstanding incumbrance on the lands of the heirs, he shall be held to have purchased for the benefit of all the tenants, upon condition only that they shall contribute their respective proportion of the consideration actually paid for the incumbrance.    *Lee & Graham* v. *Fox*, 6 Dana, 176 ;  *Rothwell* v. *Dewees*, 2 Black (U. S.), 619.

It only remains to inquire whether appellee was disseized by John Shoemaker of his interest, as tenant in common, for twenty years or more prior to the commencement of the suit.

As has been already observed, the evidence shows that, at the time of the death of John Dewitt, Sr., John Shoemaker was in possession of the lands as his tenant, and that the only claim made by him subsequently, and prior to his purchase from John Dewitt, Jr., was in right of his wife as one of the heirs at law of John Dewitt, Sr.    Under these circumstances, according to all the authorities, his possession was not adverse to appellee, but was in consonance with his rights ; and it requires clear and satisfactory proof of a subsequent disseizin of appellee to characterize his possession as becoming adverse, so as, by lapse of time, to bar appellee's right of entry.    It is not sufficient that he continues to occupy the premises and appropriates to himself the exclusive rents and profits, makes slight repairs and improvements on the lands, and pays the taxes, for all this may be consistent with the continued recognition of the rights of his co-tenants.    To constitute a disseizin " there must be outward acts of exclusive ownership, of an unequivocal character, overt and notorious, and of such a nature as, by their own import, to

impart information and give notice to the co-tenants that an adverse possession and an actual disseizin are intended to be asserted against them." *Warfield* v. *Lindell*, 38 Mo. 581.

There never was a claim made, as appears from the evidence, of exclusive ownership of these lands by John Shoemaker in his lifetime. He, by his acts, expressly admitted that John Dewitt, Jr., had an interest in the lands until his conveyance in 1851, and that Benjamin Dewitt had an interest, which he contracted for, but which was not conveyed to him, because his contract was not fully performed, in his lifetime. If, therefore, we shall concede that when John Shoemaker was treating with John Dewitt, Jr., and Benjamin Dewitt for conveyances, he assumed that they and his wife were the sole heirs at law of John Dewitt, Sr., and that he held his possession under that assumption, it is still evident that he did not claim to be in possession as exclusive owner, nor did his heirs make such claim until the conveyance by Benjamin Dewitt to them on the 9th day of November, 1864, less than twenty years before the commencement of the suit. The evidence shows that the contract between John Shoemaker and Benjamin Dewitt was carried out by the heirs of John Shoemaker, after his death; but it is not shown when that contract was made, or that John Shoemaker was, or claimed to be, even the equitable owner of Benjamin Dewitt's interest, during his lifetime.

Upon the whole, we are unable to say the court erred in finding the evidence insufficient to establish the disseizin of appellee for twenty years prior to the bringing of the suit.

The decree is affirmed.

*Decree affirmed.*