The Chicago, Peoria and St. Louis Railway Company, Appellant, *vs.* Anderson W. Tice *et al.* Appellees.

*Opinion filed February 20, 1908.*

1. Mortgages—*what does not pass under foreclosure of a trust deed.* A trust deed by a railroad company covering existing railroad property and property afterward to be acquired for the purposes of its railroad does not cover an undivided one-half interest in a tract of farm land subsequently acquired by the company, but not for railroad purposes, and no title to such interest passes upon foreclosure of the trust deed.

2. Limitations—*when statute is a bar to assertion of title by railroad.* The assertion of title under a deed conveying to a railroad company an undivided one-half interest in a tract of farm land is barred, where the grantor for more than thirty years remained in the exclusive possession of the land and paid the taxes thereon under open claim of absolute ownership, which the co-tenant, the railroad company, conceded was just.

3. Partition—*when railroad company's claim is without merit.* A claim by a railroad company of a right to partition, based upon title to an undivided half interest in a tract of land alleged to have

been derived through foreclosure of a mortgage given by another·
railroad company, to whom the interest in the land was conveyed
upon the sole consideration that the grantee would build a depot
on the land, is without merit in a court of equity, regardless of the
fact whether the agreement was a covenant, condition or otherwise,
where the evidence shows the agreement was immediately violated
by building the depot on other land for another consideration and
all claim under the deed abandoned by the grantee.

APPEAL from the Circuit Court of Menard county; the
Hon. GUY R. WILLIAMS, Judge, presiding.

CHARLES NUSBAUM, and E. H. GOLDEN, for appellant.

SMOOT & LANING, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

Appellant commenced this suit on January 16, 1907, by
filing its bill for partition in the circuit court of Menard
county against the executor of the will of John Tice, de-
ceased, and the devisees under said will, who are the ap-
pellees, claiming an undivided one-half of all that part of
the south-east quarter of the north-east quarter of sec-
tion 29, township 18, in said county, which lies south of
the right of way of appellant's railroad, containing about
thirty-six acres, and praying for a partition of the same
accordingly. The title claimed by the complainant, as set
forth in the bill, was by virtue of a deed executed by the
said John Tice and wife, dated September 3, 1873, and re-
corded December 30, 1880, to the Springfield and North-
western Railroad Company, conveying that part of said
forty-acre tract lying north of said railroad and the undi-
vided one-half of that part lying south of the railroad in
consideration of the location of the depot building and stock
yards of the railroad company on said tract of land. The
bill alleged that the title of the Springfield and Northwestern
Railroad Company had passed to complainant by virtue of

the foreclosure of a trust deed executed by the Springfield and Northwestern Railroad Company, dated February 1, 1871, and a purchase by complainant at the foreclosure sale. The defendants by their answer admitted the execution by John Tice and his wife of said deed and the recording of the same, and averred that the sole consideration of the deed was the location by the grantee, on said lands, of the depot building and stock yards; that the depot building and stock yards were never constructed but were built on other lands; that John Tice never relinquished possession of the lands but retained the same and held possession under a claim of exclusive title and ownership, and paid all taxes from the date of said deed until his death, on November 22, 1904,—a period of more than thirty years,— and that his possession was at all times hostile and adverse to every other claim or interest. The defendants pleaded the Statute of Limitations of twenty years and denied the claim and title of the complainant. The cause was referred to the master in chancery to take and report the evidence. The court heard the cause on the evidence taken and reported by the master and dismissed the bill for want of equity.

The facts proved are as follows: The Springfield and Northwestern Railroad Company executed a trust deed, in 1871, of its right of way, stations, depot grounds or buildings, built or to be built or to be thereafter acquired, and all property that might thereafter be acquired for the purposes of its railroad. John Tice owned the forty-acre tract in question and other lands lying east of it, and in the year 1873 the railroad company projected its line of railroad across said tract and entered into an agreement with him by which he executed the deed in question for the sole consideration that the company would locate its depot building and stock yards on said tract. The deed was made September 3, 1873, and about that time the railroad company was negotiating for right of way over lands lying west of the

land in question, and in settlement of the claim of the owner agreed to construct its depot on that land. It kept the second agreement, and about a year and a half or two years afterward it constructed its depot building on the other land west of this. No depot was ever constructed on this land but stock yards were built on the two-acre tract north of the railroad, which was included in the deed. The stock yards were soon permitted to fall into decay and were not fit for loading stock, but remained there about fifteen years, when they were completely rotted down. There were no stock yards at the place until about nine years ago, when pens were built on the south side of the railroad with the consent of John Tice and by agreement with him. The agreement, which furnished the only consideration for the deed, was never complied with, and John Tice remained in the continuous and exclusive possession of the property in dispute in this case for more than thirty years. He paid all the taxes, made repairs, leased the land, collected and retained all rents, and on June 10, 1878, executed a mortgage which conveyed the whole title and was duly recorded. The trust deed on the railroad was foreclosed and complainant became the purchaser and received a deed dated April 20, 1878, for the property described in the mortgage. On October 6, 1880, complainant bought from John Tice for $400 the two-acre tract north of the railroad, which the deed in question purported to convey. Neither the Springfield and Northwestern Railroad Company nor complainant ever paid any taxes on the property, and the complainant did not include it in the schedule of its property other than railroad track, for taxation.

The complainant presented to the circuit court a state of facts which would not commend it to a court of equity. It insisted that it had title to the undivided one-half of thirty-six acres of land derived through the foreclosure of a mortgage made by the Springfield and Northwestern Railroad Company, the grantee in a deed executed for the sole con-

sideration that the said company would locate its depot and stock yards on the lands, and the grantee had immediately violated its agreement by locating the depot on other land for another consideration. The complainant's position was, that the failure to locate the depot was not such a condition as would authorize a forfeiture of the estate but was a personal covenant of the grantee not running with the land, and therefore the complainant held title while the devisees of the grantor were relegated to an action for damages long since barred by the Statute of Limitations and against an insolvent and defunct corporation. Such a claim would merit but scant consideration by a court desirous of doing justice; and, if necessary, we think the court could properly have found that the agreement was entered into with a fraudulent intent of not complying with it and might have set aside the deed for that reason. In fact, the evidence justifies the belief that the grantee abandoned the whole matter and claimed nothing under the deed, which was never recorded until 1880, after the purchase by the complainant. We think it clear, however, that the complainant had no title to assert, regardless of questions of fraud, condition subsequent or forfeiture.

The trust deed of the Springfield and Northwestern Railroad Company conveyed the existing railroad property of the corporation and property afterward to be acquired for the purposes of its railroad. The undivided one-half of thirty-six acres of land constituting that part of the forty-acre tract south of the railroad was not acquired for purposes of the railroad. There was no railroad purpose to which the corporation could have put an undivided one-half of such a piece of land, and on a partition it might have acquired a tract in severalty separate from its railroad property. There was not even a village at the station and scarcely any business was done there—not enough to justify keeping up the stock pens, which rotted down. With a large recent increase in the population there are now but

three hundred inhabitants in the place, and conceding that, as the corporation had power to take real estate for the purposes of its railroad, the question whether it exceeded its power in receiving the conveyance was one which could only be raised by the State and that the legal title passed to the corporation, the trust deed did not cover it, for the reason that it was after-acquired property not acquired for the purposes of the railroad. It was not within the terms of the trust deed and the foreclosure did not carry title to the complainant.

Another complete defense was made under the Statute of Limitations. It is true that the possession of a tenant in common can only become adverse to his co-tenant by an intention to hold adversely, an adverse holding in fact, and notice of the intention to the co-tenant. It is not sufficient that one tenant in common occupies the premises and appropriates to himself the exclusive rents and profits, makes slight repairs and improvements on the land and pays the taxes, all of which may be consistent with the continued recognition of the rights of his co-tenant, but there must be outward acts of exclusive ownership, unequivocal, overt and notorious, and of such a nature as by their own import to give notice to the co-tenant that an adverse possession and an actual disseizin are intended to be asserted against him. (*Busch* v. *Huston,* 75 Ill. 343; *Ball* v. *Palmer,* 81 id. 370.) The acts of John Tice were such as to give the railroad company to understand that he claimed the entire estate; that he was not holding possession for the railroad company and that he held the entire possession for himself, so as to set the Statute of Limitations in motion and impose upon the railroad company the necessity of protecting its interest. His adverse possession continued for more than thirty years, and more than twenty years before his death he executed a mortgage purporting to convey the entire title. Beyond all question the complainant was informed of the adverse claim set up by Tice when it purchased,

in the year 1880, the two-acre tract north of the railroad which was included in the deed and which already belonged to the complainant if the undivided one-half south of the railroad does. The complainant did not include the property in its real estate other than railroad track listed for taxation, and not only knew of the adverse claim but everything indicates that it conceded the claim to be just. The bar of the Statute of Limitations had become complete long before the bill was filed.

The decree of the circuit court is affirmed.

*Decree affirmed.*