JAMES E. LONG *et al.* Appellees, *vs.* VIRGINIA L. MORRISON *et al.* Appellants.

*Opinion filed June 20, 1911—Rehearing denied October 11, 1911.*

1. LIMITATIONS—*there must be an ouster before one co-tenant can claim adversely to the other.* Before one tenant in common can acquire the other's interest under the limitation laws of Illinois, although he is in possession of the premises, he must show an ouster of the other co-tenant.

2. SAME—*what is necessary to constitute ouster of co-tenant.* To constitute a disseizin or ouster of one co-tenant by another there must be such an open, hostile and adverse possession of the premises by the occupying co-tenant against the other as shows an intention to hold possession to the exclusion of such other.

3. SAME—*the mere possession and payment of taxes by one co-tenant does not show ouster of others.* The possession of one co-tenant and payment of taxes by him are, in contemplation of law, possession and payment for the benefit of all, and do not show an ouster or disseizin of the others in the absence of outward, visible acts of exclusive ownership of such a nature as to apprise them that an adverse possession and disseizin are intended to be asserted against them by the occupying co-tenant.

FARMER and VICKERS, JJ., dissenting.

APPEAL from the Circuit Court of Christian county; the Hon. J. C. McBRIDE, Judge, presiding.

JAMES M. TAYLOR, and LESLIE J. TAYLOR, for appellants.

HOGAN & WALLACE, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by James E. Long, Florence Dorrah and Elizabeth A. Manners in the circuit court of Christian county against Virginia L. Morrison and Eliza A. Long for the partition of lots 8 and 9, in block 10, in the original town of Taylorville, in said Christian county. The bill was amended and an answer and replication were filed, a trial was had without a reference, and a decree was entered finding that James E. Long and Florence Dorrah were each the owner in fee of the undivided one-fourth and Elizabeth A. Manners was the owner in fee of the undivided one-half of said premises, and a decree for partition was entered accordingly. Virginia L. Morrison and Eliza A. Long have prosecuted an appeal to this court.

It appears from the record that on the 10th day of August, 1855, one Thomas Long purchased lots 8 and 9, in block 10, in the original town of Taylorville; that on the 28th day of February, 1861, said Thomas Long and Annis Long, his wife, conveyed said lots in fee to their sons B. F. Long and F. M. Long; that shortly thereafter F. M. Long departed this life intestate, leaving his father and mother and six brothers and sisters him surviving as his only heirs-at-law; that subsequent to the death of said F. M. Long numerous conveyances were made by and between his heirs to portions of said premises, so that in 1893 the title in fee to the undivided seven-sixteenths of said premises stood of record in Annis Long, mother of F. M. Long, and the title in fee to the undivided nine-sixteenths of said premises

stood of record in the heirs of B. F. Long, his brother; that for many years prior to the year 1893 Thomas Long and several members of his family had been engaged in the hotel business in Taylorville, the hotel carried on by them being known as the Long House; that said lots 8 and 9 were located near said hotel and were used in connection with the hotel as a barn and horse lot; that in the year 1892 (Thomas Long and B. F. Long both being dead) Annis Long sold the hotel and used the proceeds of the sale, in part, in erecting a dwelling house, which cost about $2500, upon said lots 8 and 9, in which for a time Annis Long, (the widow of Thomas Long,) Eliza A. Long, (the widow of B. F. Long,) and Thomas W. Long and Elizabeth A. Manners, a brother and sister of B. F. Long, resided as their home; that in 1893 Annis Long executed a deed to the east half of lot 8 and all of lot 9 to Thomas W. Long and Elizabeth A. Manners, and a deed to the west half of lot 8 to George W. Long, another son, who subsequently conveyed said west half of lot 8 to Thomas W. Long and Elizabeth A. Manners. Thomas W. Long, a widower, resided upon the premises until his death, and Elizabeth A. Manners, a widow, resided on the premises until about the time the original bill was filed in this case, when the possession of the premises was turned over to James E. Long by her. The complainants James E. Long and Florence Dorrah are the children of Thomas W. Long, deceased, and Elizabeth A. Manners is a daughter of Annis Long, deceased, and the defendant Eliza A. Long is the widow and the defendant Virginia L. Morrison the daughter and sole heir-at-law of B. F. Long, deceased. The original bill charged that the complainants James E. Long and Florence Dorrah were each the owner in fee of the undivided seven sixty-fourths part of said premises, that Elizabeth A. Manners was the owner of the undivided fourteen sixty-fourths part of said premises, and that Virginia L. Morrison was the owner of the undivided thirty-six sixty-fourths part of

said premises, subject to the dower of her mother, Eliza A. Long, therein, and that the dwelling house thereon had been constructed by Annis Long, deceased. The amended bill denied that Virginia L. Morrison or Eliza A. Long had any interest in said premises, and charged that one-fourth thereof belonged to James E. Long, one-fourth to Florence Dorrah and one-half to Elizabeth A. Manners, and on the final hearing the court so held, it being the view of the court, as expressed in the decree, that the interest of Virginia L. Morrison and Eliza A. Long in said premises had been barred by the Statute of Limitations.

It is admitted that the title to the said premises in the year 1893 stood of record jointly in Annis Long and the heirs of B. F. Long, Annis Long being the owner of seven-sixteenths and the heirs of B. F. Long the owner of nine-sixteenths thereof. The sole question, therefore, to be determined in this case is, had the complainants, at the time they filed their amended bill in this case, acquired, by limitation, title to the portion of said premises theretofore held by Virginia L. Morrison as sole heir-at-law of B. F. Long, deceased?

In 1893 Annis Long and the heirs of B. F. Long were tenants in common of said premises, and the law is that before a tenant in common can acquire his co-tenant's title under the limitation laws of this State, although he is in possession of the premises, he must show an ouster of his co-tenant; and to constitute a disseizin of a co-tenant there must be an open, hostile and adverse possession of the premises by the occupying co-tenant as against the co-tenant out of possession,—such a possession as shows an intention to hold possession of the premises to the exclusion of the joint owner who is out of possession. In *Busch v. Huston,* 75 Ill. 343, on page 347, it was said: "It is not sufficient that he [a co-tenant] continues to occupy the premises and appropriates to himself the exclusive rents and profits, makes slight repairs and improvements on the lands

and pays the taxes, for all this may be consistent with the
continued recognition of the rights of his co-tenants. To
constitute disseizin 'there must be outward acts of exclu-
sive ownership of an unequivocal character, overt and no-
torious, and of such a nature as by their own import to
impart information and give notice to the co-tenants that
an adverse possession and an actual disseizin are intended
to be asserted against them.' " It is obvious, we think, that
the evidence found in this record falls far short of showing
an ouster or disseizin as against Virginia L. Morrison, the
heir of B. F. Long, deceased.

Elizabeth A. Manners, a complainant, in answer to the
question, "Mrs. Manners, did you ever tell Mrs. Long or
Mrs. Morrison here that you claimed that property,—you
and Mr. Long,—and that they had no interest in it?" tes-
tified as follows: "No, sir; I never did. I never made
any claim to them that Mr. Long and I owned that prop-
erty exclusively. The matter of ownership of that prop-
erty was never discussed between us, to our knowledge."

Eliza A. Long, in answer to the question, "Now, I will
ask you, Mrs. Long, if any claim was ever made, of any
kind, by either Mrs. Long in her life or by Mr. T. W. Long
or Mrs. Manners, that they were the exclusive owners of
that property?" testified as follows: "Nothing was ever
said to me in any way that myself or husband or daughter
did not have an interest in the property. It was never men-
tioned. The question of ownership was never discussed by
Mrs. Long or Mrs. Manners or myself, nor by Thomas W.
Long and Mrs. Manners and myself."

Virginia L. Morrison testified: "I am well acquainted
with Mrs. Manners and Thomas W. Long. They are aunt
and uncle, respectively. I remember when the house was
built on that property. I knew at that time that my father
had an interest in the property. My grandmother built
that house. I have never had a word of conversation with
Thomas W. Long or Mrs. Manners with regard to the

ownership of that house. Neither of them at any time ever claimed to me that they were the owners of the property. I never discussed the matter with them in any way. My relation with them during all these years has always been friendly. There has never been any dispute between us, prior to the bringing of this suit, as to the ownership of these two lots. We never discussed it. There never has been any discussion between us and they never made any claim that I had no interest in the property." And again: "Now you may state, if you knew that you owned an interest in the property, why you never made any claim before the bringing of this suit." She answered: "Because of the request my father had made of my mother. And grandma had built the house, saying she wanted it to be a home for Uncle Tom, Aunt Lizzie and my mother. I wouldn't disturb Uncle Tom and Aunt Lizzie as long as they cared to live in it. I expected after Uncle Tom died, when it came to Aunt Lizzie's death, to claim my share, for I thought the other children could afford to let me have it. That is the exact reason we have never claimed anything."

The testimony of these witnesses is all the direct evidence there is in this record upon the question of the exclusion of the defendants from said premises or which tends to establish adverse possession of said premises in the complainants, other than the admitted facts that in 1893 Annis Long built a house on said premises with money derived from the sale of the hotel property, (nine-sixteenths of which belonged to Virginia L. Morrison, subject to her mother's dower therein,) for the joint use of herself and Thomas W. Long, Elizabeth A. Manners and the widow of B. F. Long, the mother of Virginia L. Morrison, and a statement taken from the tax record in the county clerk's office, which showed that someone other than Virginia L. Morrison (who it was being left in doubt by the statement) had paid the taxes on said premises from the year 1892 to

the time of the commencement of this suit. In *McMahill*
v. *Torrence*, 163 Ill. 277, on page 281, it was said: "Pos-
session by him [a co-tenant] and payment of taxes, how-
ever long continued, would not constitute a bar under the
statute, as one tenant in common cannot set up the statu-
tory bar against his co-tenant. (*Stevens* v. *Wait*, 112 Ill.
544; *Comer* v. *Comer*, 119 id. 170.) The reason of this
rule is, that the possession of one tenant, in contemplation
of law, is the possession of the others; and this is espe-
cially so where all the parties derive title from the same
deed or from the same ancestor. (*Dugan* v. *Follett*, 100
Ill. 581; Angell on Limitations, secs. 422, 423.) The pos-
session of one co-tenant will not be adverse to the other
where there is a mere possession of the premises and an
appropriation of the rents. Something more is required.
(*Todd* v. *Todd*, 117 Ill. 92.) 'It is not sufficient that he
continues to occupy the premises and appropriates to him-
self the exclusive rents and profits, makes slight repairs and
improvements on the lands and pays the taxes, for all this
may be consistent with the continued recognition of the
rights of his co-tenants. To constitute a disseizin there
must be outward acts of exclusive ownership of an un-
equivocal character, overt and notorious, and of such a na-
ture as by their own import to impart information and give
notice to the co-tenants that an adverse possession and an
actual disseizin are intended to be asserted against them.'—
*Busch* v. *Huston*, 75 Ill. 343; *Ball* v. *Palmer*, 81 id. 370."
And in *Carpenter* v. *Fletcher*, 239 Ill. 440, on page 444, it
was said: "The rule is well settled that the mere posses-
sion by one tenant in common who receives all the rents
and profits and pays the taxes assessed against the prop-
erty, no matter for how long a period, cannot be set up as
a bar against the co-tenants. In such case the possession
of one tenant in common is, in contemplation of law, the
possession of all the tenants in common. (*McMahill* v.
*Torrence*, 163 Ill. 277, and cases there cited.) Such pos-

session, however, may become adverse if the tenant in common by his acts and conduct disseizes his co-tenants by repudiating their title and claiming adversely to them."

It is contended that the execution and delivery of the deed by Annis Long, in 1893, of the entire premises amounted to an ouster of Virginia L. Morrison. We recognize the law to be, that where a co-tenant conveys the entire premises to a purchaser who buys in good faith, and the grantee takes possession under such conveyance and pays the taxes and remains in the adverse possession of the premises for the statutory period, he may thereby build up a good title by limitation, as against the co-tenant of his grantor. (*Goewey* v. *Urig,* 18 Ill. 238; *Hinkley* v. *Greene,* 52 id. 223; *Steele* v. *Steele,* 220 id. 318; *Waterman Hall* v. *Waterman,* 220 id. 569.) We are of the opinion, however, that doctrine cannot be invoked in this case to defeat the title of Virginia L. Morrison for the following reasons: First, the grantees of Annis Long had been the co-tenants of Virginia L. Morrison and knew that Annis Long did not own the entire premises; second, the grantees in the deed were living upon the premises with the grantor at the time the deed was made and continued to so live until her death, and at the time the deed was executed and delivered there was no change in the possession,—in other words, they did not take possession under the deed; and third, at no time was the possession of the grantees adverse to Virginia L. Morrison, as the possession of the appellees was at all times for the benefit of themselves and Virginia L. Morrison, and they could not acquire a limitation title by reason of such possession, as against her. *Carpenter* v. *Fletcher,* 239 Ill. 440.

We think the appellees have wholly failed to show title in themselves other than as to the twenty-eight sixty-fourths part of said premises, and that the evidence clearly shows that the house which was erected on said premises by Annis Long, the grandmother of Virginia L. Morrison, was

built from the proceeds of the sale of the hotel property, nine-sixteenths of which belonged to Virginia L. Morrison as heir-at-law of B. F. Long, deceased. It would appear, therefore, equitable, and to accord with justice, we think, to hold that Virginia L. Morrison should be decreed a thirty-six sixty-fourths part of said premises, subject only to her mother's right of dower therein.

The decree of the circuit court will be reversed and the cause will be remanded to that court, with directions to enter a decree finding James E. Long and Florence Dorrah each to be the owner of a seven sixty-fourths part of said premises, Elizabeth A. Manners to be the owner of a fourteen sixty-fourths part thereof and Virginia L. Morrison to be the owner of a thirty-six sixty-fourths part thereof, the portion decreed to Virginia L. Morrison to be subject to the dower right of Eliza A. Long, as the widow of B. F. Long, deceased.

*Reversed and remanded, with directions.*

FARMER and VICKERS, JJ., dissenting:

The deed from Annis Long, in 1893, to Thomas W. Long and Mrs. Manners for the whole of lot 9 and the east half of lot 8, and the deed to George W. Long for the west half of lot 8, were warranty deeds and purported to convey title to the whole of the premises to the grantees. The same year George W. Long made a deed to Thomas W. Long and Mrs. Manners purporting to convey to them the title to the whole of the west half of lot 8. Thomas W. Long and Mrs. Manners have been in the sole possession and use of the whole of the premises since those conveyances were made, in 1893, and the answer of appellants admits they paid the taxes thereon. As early as *Goewey* v. *Urig,* 18 Ill. 238, this court held that a sale by one tenant in common of the whole premises, followed by adverse possession, "amounts to an ouster or disseizin of the cotenants, and the Statute of Limitations will bar their action

or entry." This has been approved in *Hinkley* v. *Greene,* 52 Ill. 223, *Lavalle* v. *Strobel,* 89 id. 370, and later cases. In *Steele* v. *Steele,* 220 Ill. 318, where the Statute of Limitations was set up against parties claiming an interest in premises which had been conveyed by a co-tenant, it was insisted the Statute of Limitations did not apply, for the reason "that complainants and defendants are tenants in common, the complainants owning an undivided one-fourth and the defendants an undivided three-fourths of the property, and that the possession of one tenant in common can not be adverse to his co-tenant." The court said: "It is the general rule that statutes of limitation do not run as between tenants in common, for the reason that the possession of one tenant is, in contemplation of law, the possession of all; but if, as a matter of fact, the possession of one is adverse to the other, a right of action may be barred or title may be acquired under a statute of limitations. If one tenant in common holds exclusive possession, claiming the land as his, and his conduct and possession are of such a character as to give notice to his co-tenant that his possession is adverse, the Statute of Limitations will run." Under these decisions we think the Statute of Limitations was bound to run against appellants unless the proof showed the title of the grantees of Annis Long was not obtained in good faith or that their possession was not adverse, and the burden was upon appellants to prove one or the other of these facts to take the case out of the operation of the Statute of Limitations. (*Burgett* v. *Taliaferro,* 118 Ill. 503.) In our opinion the decree of the circuit court was in harmony with the previous decisions of this court and should be affirmed.