(No. 27448.—

HARRY O. WHITTINGTON *et al.*, Appellants, *vs.* A. A. CAMERON *et al.*, Appellees.

*Opinion filed Nov. 19, 1943—Rehearing denied Jan. 13, 1944.*

MARTIN J. DOLAN, of Mt. Vernon, and HARRY C. KINNE, of Chicago, for appellants.

HEFNER & HARRIS, of Evansville, Ind., HARRY ANDERSON, of McLeansboro, JOSEPH F. DIVER, of Marshall, GEORGE W. HOWARD, JR., of Mt. Vernon, and HARRY C. TEMPLE, of Salem, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Hamilton county dismissing plaintiffs' amended complaint

for want of equity and on cross complaint, removing, as clouds upon the respective titles of the defendants, certain oil and gas leases and a deed under which plaintiffs claimed an interest in the premises and the oil and gas taken therefrom. Since title to a freehold is involved, the appeal is brought direct to this court. The suit involves the title to the east fifteen acres of the southwest quarter of the northwest quarter of section 24, township 6 south, range 5 east of the 3d P. M., in Hamilton county, Illinois.

The pleadings, testimony and exhibits establish the following facts: One William J. Hunt, then owner of the south half of the northwest quarter of said section 24, in December, 1885, conveyed to James D. Black and another, a portion thereof described as "Twenty-five acres off the West side and end of the Southwest Quarter of the Northwest Quarter of Section 24." Later, on October 4, 1886, he executed a warranty deed conveying to Alfred D. Braden, father of appellant Leah Braden Whittington, real estate described in the following language: "The und. ½ S ½. NW 24, Town 6 Range 5 forty 40 acres and The East part Being the East Fifteen acres of the South West fourth of the North West quarter of Section No. twenty four town Six range five Situated in the county of hamilton and State of Illinois East of the 3 principal, P.d." The wife of Hunt joined in the execution of both deeds.

Appellant Harry O. Whittington contends that by the latter deed Hunt conveyed only an undivided one-half interest to Alfred D. Braden in the east fifteen acres in controversy. Hunt died in 1894. No other conveyance of this property was made by Hunt during his lifetime, nor by his heirs-at-law after his death. In December, 1941, and in January and February, 1942, appellant Harry O. Whittington obtained oil and gas leases covering the land in question from the heirs-at-law of William J. Hunt, and asserts that thereby he acquired the oil and gas rights in the undivided one-half interest which he claims remained

in Hunt after his deed to Braden, and so owns an undivided one-half interest in and to the oil and gas rights in the fifteen acres here in controversy. Appellants also claim title to the undivided one-half interest in said fifteen acres which they claim was conveyed to Braden. This claim, they say, is based on the following facts: Alfred D. Braden died intestate August 25, 1887, leaving as his sole heirs-at-law his widow Margaret A. Braden and Leah Braden, his infant daughter. Upon Braden's death the widow abandoned the premises as a homestead and moved to Franklin county, Illinois, where she was appointed guardian of Leah, her minor daughter, by order of the county court of that county. As such guardian she sought and secured an order of the county court to sell Leah's interest in her father's estate, and made such sale as guardian. The description by which this land was conveyed was the same as in the deed to Alfred D. Braden. The purchasers at such sale, Napoleon A. Vaughn and Charity P. Vaughn, received a guardian's deed dated April 10, 1889. Later Leah married appellant Harry O. Whittington and appears here as Leah Braden Whittington, appellant. Appellants both contend that the guardian's deed was void by reason of serious irregularities in the guardianship proceedings, and argue that the sale and deed being void, Leah Braden Whittington is the owner of an undivided one-half of said fifteen acres, and that by her execution of an oil and gas lease dated January 2, 1942, to her husband, as lessee, appellant Harry O. Whittington has a good and valid oil and gas lease for the entire fifteen acres.

Appellee Oscar C. Smith, and other appellees claiming interests in the oil and gas rights in said premises through him, assert that the original deed from Hunt to Braden conveyed the entire fee-simple estate in the fifteen-acre tract to Braden; that upon his death, through the guardian's sale above referred to, title to the entire fifteen-acre tract passed to Napoleon A. Vaughn and Charity P.

Vaughn, who, on September 16, 1893, conveyed said property together with the forty acres adjoining it on the east, by warranty deed to Willie G. Moore, their deed being to the East 55 acres of the south half of the northwest quarter of section 24, thus beginning a chain of title by which appellees claim said real estate and the oil and gas rights in the fifteen acres in controversy. Appellees also pleaded the Statute of Limitations as a bar to any interest claimed by appellants and argue that they and their predecessors in title have had and maintained the property adversely to appellants and those under whom they claim, during the entire period required by the twenty-year statute and paid taxes under the seven-year statute relating to adverse possession.

The record shows that the purchasers at the guardian's sale, by their conveyance, in 1893, of the east 55 acres of the south half of the northwest quarter of section 24 to Willie G. Moore, conveyed not an undivided one-half interest but the entire interest in the fifteen acres. The description in their deed covers the entire interest owned by William J. Hunt in the south half of the northwest quarter at the date of his deed to Braden. Moore, by warranty deed, on September 18, 1893, conveyed the 55 acres to one C. H. Smith, known as Columbus H. Smith, grandfather of appellee Oscar C. Smith, and Smith entered into possession of the entire 55 acres through tenants. From 1893 forward to date of suit, more than 49 years, successive grantees have held title under this description.

In July, 1898, Columbus H. Smith conveyed the land by warranty deed to his son John, reserving a life estate to himself. John moved upon the land and occupied it with permission of his father until March 7, 1906, when he reconveyed to his father and gave up possession of the land. On the same day Columbus H. Smith, by warranty deed, conveyed the land to his daughter Lillie, again reserving a life estate therein to himself, and both he and

his daughter entered into a dual possession of the land. The length of their actual occupancy is not definitely shown in the record. On October 10, 1936, Lillie Smith, who had theretofore married James Braden, with her husband conveyed by warranty deed her interest in the 55 acres to O. C. Smith.

John L. Smith testified that his sister had possession until about a year before the cyclone in 1925, when she moved to Missouri, and it was then leased to one Pittman, who was killed in that disaster while tenant on the premises. Another witness, a neighbor, testified Lillie and her father resided there in the year 1918. John L. Smith further testified Lillie and his father resided on the land until she moved to Missouri. We believe the evidence sufficiently establishes the fact that from 1893 to 1925 Columbus H. Smith, either as owner or life tenant, occupied or had possession of said 55 acres in person or by tenants in the persons of his son and daughter, the respective remaindermen for the periods of their occupancy, and by other tenants.

During all the period referred to, Columbus H. Smith, his son John, his daughter or her husband, paid the taxes thereon. From 1905 to 1916 continuously Columbus H. Smith both resided on and paid the taxes on the property in question. Appellants, however, cite the rule that one cotenant cannot gain title by adverse possession against another cotenant except by disseizin or ouster by outward acts of exclusive ownership unequivocal in character, overt and notorious, sufficient to impart information to and apprise his cotenant that an adverse possession and actual disseizin are intended to be asserted by the tenant in possession. It is stated that the interest of Alfred Braden in said real estate was that of cotenant in common with his grantor Hunt, and that Braden's heirs and those claiming through them were likewise cotenants, and that none ever took any steps even approaching actual disseizin. They cite *Dun-*

*lavy* v. *Lowrie,* 372 Ill. 622, *Clarke* v. *Clarke,* 349 Ill. 642, *Farmer* v. *Reed,* 335 Ill. 156, *Craig* v. *Cox,* 255 Ill. 564, *Long* v. *Morrison,* 251 Ill. 143, and *Smith* v. *Tucker,* 250 Ill. 50, in support of this contention. The cases cited deal with situations wherein a tenant in common by reason of deeds purporting to convey the fee from other cotenants, attempted to establish title by adverse possession in himself against the remaining cotenants. That is not the question here presented. Assuming that the Braden heirs were cotenants in possession and that court sale in the guardianship proceedings in effect constituted the purchaser a cotenant of the Hunt heirs, the purchasers, the Vaughns, by their conveyance to Willie G. Moore of the entire tract of 55 acres, purported to convey the title in fee, not to a cotenant but to a stranger in title. Moore's grant of a like fee title to Columbus H. Smith was the commencement of the period of adverse possession relied upon.

The rule applicable here is stated in *Long* v. *Morrison,* 251 Ill. 143, cited by appellants. This court there stated the law to be, "where a co-tenant conveys the entire premises to a purchaser who buys in good faith, and the grantee takes possession under such conveyance and pays the taxes and remains in the adverse possession of the premises for the statutory period, he may thereby build up a good title by limitation, as against the co-tenant of his grantor." It is not contended that Willie G. Moore purchased the fee in bad faith or with knowledge of any claim of ownership by others, nor is it contended that Smith, his grantee, did not purchase the land in good faith. The evidence shows Smith paid full value for it and took possession of the land, and assuming the possession to be adverse for more than twenty years, the requirements of that limitation statute were met. There was no proof of bad faith, and, in the absence of such evidence, good faith will be presumed. *Hughes* v. *Hall,* 284 Ill. 628.

It is further contended by appellants that the necessary continuity of the adverse possession was broken by reason of the deeds from Columbus H. Smith to his son and daughter, reserving a life estate to himself. They urge that title by adverse possession under the statute may only be acquired by actual possession, and that a remainder-man, such as were the son and daughter, not being entitled to possession until the termination of the life estate, could not assert adverse possession against the life tenant or anyone else, and, it is further argued, Columbus Smith could not claim possession adversely against anyone under section 6 of the Limitation Act because, as life tenant, he had not the required color of title to support such claim. Appellants' contention in this respect is not supported by the decisions of this court. In the case of *Roberts* v. *Cox,* 259 Ill. 232, this court recognized the right of the remainderman to tack his possession to that of the life tenant for the purpose of barring, under the twenty-year Statute of Limitations, claims of other persons to the real estate in dispute. In *Brown* v. *Ray,* 314 Ill. 570, this court adopted the doctrine laid down in *Hanson* v. *Johnson,* 62 Md. 25, that " 'The estate claimed by him [the life tenant] was a freehold, and as there could only be one possession or seizin of the same estate at the same time, his possession inured to the benefit of the remainderman. His possession was in law the possession of the remainderman, and as such it represented the entire estate,—his own estate for life and the estate for George A. Hanson in remainder,—and his claim of title and possession being hostile to the title of appellants as heirs-at-law, his possession was, as against them, adverse and exclusive.' "

Counsel for appellants argue that the possession of Columbus H. Smith and his successors in title was not sufficient to constitute adverse possession under either the twenty-year or the seven-year statute. We have previously

herein found that Columbus H. Smith was in continuous possession of the premises from 1893 to 1925, a period of more than thirty years. Possession, to be adverse, does not require the actual residence thereon of persons claiming adversely. The fact that the person who exercised control over the land does not live on it, does not imply that he was not in possession. (*Eddy* v. *Gage,* 147 Ill. 162; *Chicago Title and Trust Co.* v. *Darley,* 363 Ill. 197.) Possession by tenants of Smith, or by the remainderman with his permission, was possession of Smith himself. (*Foote* v. *City of Chicago,* 368 Ill. 307, *Martin* v. *Judd,* 81 Ill. 488.) The evidence discloses that at the time Smith acquired the land there was located thereon a small log cabin and perhaps a barn, and that the land was worn out; that, commencing shortly after he obtained title, he caused the land to be cleared and erected fences and a good house and barn, which the evidence shows were there at the time of the cyclone in 1925. The evidence also shows that during all the years up to 1925 crops were grown on the land by tenants, or members of Smith's family, under his control and direction.

At no time, until two wells were drilled by appellees and oil was being produced from the premises, was any claim to any part of the real estate made by appellants or the persons under whom they claim, nor were leases obtained by appellants, though the evidence tends to show appellants knew of the land and observed its condition from time to time and knew of its occupancy by others. Appellants do not deny that Smith and his successors in title claimed to be the owners thereof. Testimony of neighbors was to the effect that it was generally known that the land belonged to Columbus Smith and his children during this period.

As this court said in *Chicago Title and Trust Co.* v. *Darley,* 363 Ill. 197, citing *Davis* v. *Haines,* 349 Ill. 622: " 'What acts constitute adverse possession are necessarily

varied, depending upon the nature, locality and use to which the property may be applied. * * * The rule is, that such improvements or acts of dominion over the land as will indicate to persons residing in the immediate neighborhood who is exercising the exclusive control and management of land will be deemed sufficient to constitute possession, and where property is so situated as not to permit the erection of permanent, useful improvements, a claim of ownership evidenced by public acts of ownership, such as one would exercise over property of that character which he claimed in his own right and would not exercise over property which he did not claim to own may constitute actual possession.'" This court further said in that case: "Complainant's predecessors in title evidently did everything with this land that could be done with it. They fenced it in and devoted it to the best purposes for which it was suitable. They pastured live stock on it and regularly cut, baled and sold the hay. It was not suitable for general farming and we can think of nothing more that could have been done to evidence their intention to exercise dominion over it."

We believe it apparent from this record that appellees, Oscar C. Smith and those claiming under him, have established the bar of the statute by adverse possession for a period of more than twenty years; that such possession was hostile in its inception, continued without interruption for more than twenty years, from 1893 to 1925, and that such possession was actual, visible and exclusive, and was acquired and retained by them under claim of title inconsistent with the title of appellants. Under this view of the record it does not become necessary to construe the deed from Hunt to Alfred D. Braden, nor to determine the questions raised as to the seven-year Statute of Limitations.

The decree of the circuit court of Hamilton county is affirmed.

*Decree affirmed.*