FRANK McCREE *et al.*, Plaintiffs and Counterdefendants-Appellees, *v.* JOHN F. JONES *et al.*, Defendants and Counterplaintiffs-Appellants.

Fifth District    No. 80-471

Opinion filed December 30, 1981.

C. Robert Hall, of Carbondale, for appellants.

Fowler and Novick, of Marion, for appellees.

JUSTICE WELCH delivered the opinion of the court:

This case concerns the title to two parcels of land in Williamson County. The trial court held that the plaintiffs, Frank and Betty McCree, owned the land in fee simple by virtue of adverse possession. The defendants have appealed to this court, where they argue that the requirements for adverse possession have not been met, and that the trial court should have partitioned the property in recognition of their interest in it.

The property in question has been in the McCree family since the early years of this century. Tract I consists of 20 acres of farmland, 14 acres of which were owned solely by Katie McCree, and six acres of which were owned by Katie and her husband, John, during her lifetime.

Tract II is largely a strip pit, as it was mined during the 1930's, but several of the 25 acres in this land are tillable. It was owned by John McCree in his lifetime.

Katie McCree died intestate on May 16, 1926, leaving as her survivors her husband, John, and their three children, Mary Jones, Viola McCree, and Sam McCree. As the parties stipulated, this left John with a one-third interest in 14 acres of Tract I and a two-thirds interest in the remaining six acres. Mary, Viola, and Sam each owned a two-ninths interest in the 14 acres and a one-ninth interest in the six acres.

On March 31, 1932, Mary Jones and her husband, Fred Jones, conveyed by quitclaim deed all interest in the two tracts in favor of Viola McCree. The parties dispute the legal effect of this document, but, as a quitclaim deed does not pass a future interest or after-acquired title (Ill. Rev. Stat. 1979, ch. 30, par. 8; *Bruce v. McCormick* (1947), 396 Ill. 482, 72 N.E.2d 333), it could have conveyed only the interest which Mary owned in 1932, namely that portion of Tract I which she inherited from her mother, Katie McCree. Thus, after the execution of the quitclaim deed, John retained his one-third interest in the 14 acres and his two-thirds interest in the six acres. Viola owned four-ninths of the 14 acres, and two-ninths of the six acres, while Sam held two-ninths and one-ninth of those plots, respectively.

On April 2, 1939, John McCree died intestate and his interest in the property passed equally to his three children. After his death, Mary Jones owned one-ninth of the 14 acres, two-ninths of the six acres and one-third of the entire 25-acre parcel known as Tract II. Viola became the owner of five-ninths of the 14 acres, four-ninths of the six acres and one-third of Tract II. By coincidence of arithmetic, Sam retained one-third of each piece of land. This pattern of ownership was maintained for nearly 30 years.

During this period, Sam farmed all of Tract I and two acres of Tract II. According to tenant-farming custom, Sam kept two-thirds of the proceeds from his crops and gave one-third to Viola, but nothing to Mary. Sam and Viola paid the real estate taxes on the land. According to the evidence introduced at trial, there is nothing to show that Mary Jones objected to this arrangement, or requested part of the profits, even though she lived near Viola McCree in Carterville, Illinois.

On September 25, 1967, Viola quitclaimed all interest in both tracts in favor of Sam. Assuming that she had not previously been divested of it by adverse possession, Mary then held the legal title to one-ninth of the 14 acres, two-ninths of the six acres and one-third of Tract II, with Sam holding the remaining portions of the lots. Viola and Sam joined in a conveyance by warranty deed on February 14, 1968. This document purported to convey all of Tract I and Tract II to the plaintiffs, Frank and

Betty McCree, who are the son and daughter-in-law of Sam McCree. Frank and Betty McCree paid $1,500 for the property, $1,000 to Viola and $500 to Sam. Mary Jones was not mentioned in this deed.

Following the 1968 transaction, Frank and Betty assumed Sam's position as the cultivator of the land, although they did not notify Mary Jones or her children of the change in circumstances. Frank and Betty retained all profits from the sale of their crops, and paid all real estate taxes on the land, as receipts from 1969 through 1977 show. Mary Jones did not express any interest in the land, according to Frank and Betty McCree.

Viola McCree died in 1970, leaving no husband or issue. Mary Jones died the following year, survived by her five children, who are the defendants in this lawsuit. The Jones heirs did not then claim ownership of the McCree land, and Frank McCree testified that even though he occasionally discussed farming with those of the heirs who lived in and around Williamson County, they did not ask him for a share of the profits from the sale of his crops.

In April 1979, Frank and Betty McCree filed a complaint against the children of Mary Jones to quiet title to the property in themselves. The defendants filed a counterclaim in which they sought partition of the tracts. Upon hearing testimony from the plaintiffs, from a woman whose land adjoined Tract II, and from one of the defendants, the trial court entered judgment for the plaintiffs. In its final judgment order, the court found:

> "[t]hat the possession and claims of title to said real estate by Frank McCree and Betty McCree have been under color of title made in good faith and continued possession and payment of taxes for seven years in accordance with the provisions of Chapter 83, Section 6 of the Illinois Revised Statutes."

■■ In this appeal, defendants argue that the plaintiffs did not notify or oust Mary Jones or her heirs, as is required before a tenant in common may set up a claim of adverse possession against a co-tenant. (*Mercer v. Wayman* (1956), 9 Ill. 2d 441, 137 N.E.2d 815.) While the defendants state a correct rule of law, that rule does not apply to this case. As the court stated in *Mercer*, actual notice or ouster is not required if a co-tenant gives a deed of the entire property to a stranger in title. (9 Ill. 2d 441, 447, 137 N.E.2d 815, 819.) This is because "[a]n entry by the grantee of one tenant in common under a conveyance which purports to convey the whole estate, not acknowledging the right of any other person in the land, amounts to an ouster of co-tenants and the possession of the land is adverse as to them." *Waterman Hall v. Waterman* (1906), 220 Ill. 569, 574, 77 N.E. 142, 143.

■■ Nowhere has it been alleged that Frank and Betty McCree had any

interest in the land before the execution of the 1968 warranty deed. Before they paid $1,500 and moved onto the land, Frank and Betty had at most an expectation of inheritance in the land, for *nemo est haeres viventis*. They were not co-tenants of Mary Jones, or of Sam and Viola McCree, but they were only strangers in title. Because Frank and Betty had no interest in the land before the 1968 deed, they are entitled to rely upon the statute of limitations, if they have met all other requirements of adverse possession. *Whittington v. Cameron* (1943), 385 Ill. 99, 52 N.E.2d 134.

■■ To support a claim of adverse possession under section 6 of the Limitations Act, a claimant must show that he acted "under claim and color of title, made in good faith" to adversely possess the land in question for seven years and to pay the taxes on that property for that time. (Ill. Rev. Stat. 1979, ch. 83, par. 6; *Belunski v. Oakes* (1955), 6 Ill. 2d 176, 128 N.E.2d 689.) It cannot be disputed that the plaintiffs possessed the land adversely and continuously and paid taxes on it for seven years. But, the defendants urge that the plaintiffs did not acquire color of title to the property in good faith. Defendants may not maintain that the 1968 warranty deed was insufficient to give color of title, because that instrument purports on its face to convey title to the plaintiffs. (*Bergesen v. Clauss* (1958), 15 Ill. 2d 337, 155 N.E.2d 20; *Belunski v. Oakes.*) Instead, we understand defendants to argue that, as the plaintiffs should have known of Mary Jones' interest in the property, they did not accept the warranty deed "in good faith."

■■ The "good faith" required by section 6 of the Limitations Act has been defined negatively as the absence of an intent to defraud the holder of better title, or, simply, as the absence of bad faith. (*Gochenour v. Logsdon* (1940), 375 Ill. 139, 30 N.E.2d 666; *Dunlavy v. Lowrie* (1939), 372 Ill. 622, 25 N.E.2d 67.) It does not require the claimant to be ignorant of all defects in title, and good faith acquisition of title is presumed until it is disproven by evidence of fraud or actual bad faith. *Gochenour v. Logsdon*; *Dunlavy v. Lowrie*; *Bergesen v. Clauss*.

In this case, there is no evidence to suggest that Frank and Betty McCree received the warranty deed from Sam and Viola McCree in order to defraud Mary Jones of her interest in the land. What little evidence was introduced at trial tends to show no reason for the plaintiffs to have ever been aware of Mary Jones' interest.

■■ For 30 years, Sam and Viola took sole responsibility for the property. He farmed it, gave her one-third of the profits, and paid the taxes, while Mary Jones did nothing to indicate to anyone, especially the plaintiffs, that she was a co-tenant. It appears that all concerned parties labored under the misapprehension that the 1932 quitclaim deed extinguished all of Mary's rights to the property. It also seems likely that, when the plaintiffs purchased the land for $1,500, their neglect of Mary Jones was

similarly unintentional. In this record, there is virtually no evidence to rebut the presumption that the plaintiffs acquired title in good faith, and the trial court's holding to that effect is not against the manifest weight of the evidence.

The plaintiffs have satisfied all requirements for a claim of adverse possession under section 6 of the Limitations Act. For that reason, we affirm the decision of the Circuit Court of Williamson County.

Affirmed.

HARRISON, J., concurs.

JUSTICE KASSERMAN, dissenting:
Plaintiffs, and their predecessors in title, were tenants in common with Mary Jones and, after her death, with her heirs. It is my opinion that the record does not disclose evidence sufficient to establish a claim of adverse possession against defendants under the rationale of *Mercer v. Wayman* (1956), 9 Ill. 2d 441, 137 N.E.2d 815; therefore, I respectfully dissent.

The majority correctly takes into account the fact that although Mary Jones divested herself of all her interest in the two tracts of real estate in dispute in 1932, her father, John McCree, was still alive and was the owner of an undivided interest in such tracts. Further, when John McCree died intestate in 1939, Mary Jones inherited one-third of the interest that he owned at the time of his death. Plaintiffs subsequently became the owners of all other interest in such two parcels of real estate by virtue of their deed from Sam McCree and his sister, Viola McCree.

As stated by the majority, Mary Jones' deed to her sister, Viola McCree, made before their father's death, would not be effective to convey title to the interest in the real estate she later inherited from their father because a quitclaim deed does not operate to pass after-acquired title.

I do not agree, however, with the majority's application of *Mercer v. Wayman* to the instant case. Mary Jones owned an undivided interest in the real estate in question from the date of her father's death in 1939 until her own death in 1971. Thereafter, defendants, her children, succeeded to whatever interest she had in such property. Plaintiffs first acquired an interest in the premises by virtue of the 1968 deed from Sam McCree and Viola McCree. The majority concludes that plaintiffs acquired title to all outstanding interests in the real estate in question in the instant case by adverse possession under section 6 of the Limitations Act, stating that "[i]t cannot be disputed that the plaintiffs possessed the land adversely and continuously and paid taxes on it for seven years." The majority recog-

nizes that plaintiffs' possession cannot be adverse to their co-tenants absent notification by plaintiffs of their claim of ownership or ouster of such co-tenants. The majority states, however, that ouster of a co-tenant may be in the form of a deed to "a stranger in title" made in good faith; and they conclude that the record in the case at bar indicates such an ouster.

In this regard, the evidence discloses that Viola McCree conveyed all her interest in the real estate in question to her brother, Sam McCree, by quitclaim deed dated September 25, 1967. Less than five months later, she joined with her brother, Sam, in the execution of a warranty deed conveying the premises to plaintiffs, Sam's son and daughter-in-law. Contrary to the holding of the majority that the evidence indicates that plaintiffs acquired title to such premises in good faith, it is my conclusion that the fact that Viola was required to join Sam in the execution of the warranty deed to plaintiffs when she owned no interest in the premises indicates that plaintiffs were aware of the actual status of the title. This conclusion is further borne out by evidence in the record that Viola, who at the time owned no interest in the real estate conveyed, was paid $1,000 for her execution of the warranty deed to plaintiffs. Sam, the father of one plaintiff and the father-in-law of the other, was the owner of all the premises other than the interest of Mary Jones. He was paid only $500.

Additionally, the majority concludes that the deed from Sam and Viola McCree to plaintiffs constitutes color of title; however, such a conclusion is not dictated by the evidence in my opinion. Defendants and their predecessor in title were, in fact, the record owners of an interest in the real estate in question. No one purported to convey such interest to plaintiffs, in any manner, even by a forged deed as in *Bergesen v. Clauss* (1958), 15 Ill. 2d 337, 155 N.E.2d 20, which is relied upon in the majority opinion. Defendants' ownership would have been indicated by the examination of an abstract of title to the premises, coupled with plaintiffs' actual knowledge of the heirship of John McCree. The holding of the majority renders totally ineffective the act relating to the registration of land titles (Ill. Rev. Stat. 1979, ch. 30, par. 45 *et seq.*).

Moreover, the majority observes that it appears that all concerned parties labored under the misapprehension that the 1932 quitclaim deed extinguished all of Mary Jones' rights to the property. Then, in conclusion, the majority states: "It also seems likely that, when plaintiffs purchased the land for $1500, their neglect of Mary Jones was similarly unintentional." I cannot perceive any method whereby plaintiffs could act unintentionally and at the same time possess the real estate in question adversely and hostilely to the interests of Mary Jones.

For these reasons, it is my conclusion that plaintiffs have not met the requirements of *Mercer v. Wayman* because they have failed to establish

that the possession of Sam McCree and plaintiffs was hostile and adverse to Mary Jones' and defendants' ownership of an interest in the real estate in question. This is a fatal defect in plaintiffs' proof. In this regard, the court in *Mercer v. Wayman* stated:

> "While the plaintiffs exercised such control and dominion over the property as to be hostile and adverse to all strangers, the rules with regard to adverse possession are different in the case of one cotenant who claims adversely to other cotenants. The doctrine was well stated in *Simpson v. Manson*, 345 Ill. 543, 551: 'The rule is well settled that the mere possession by one tenant in common who receives all the rents and profits and pays the taxes assessed against the property, no matter for how long a period, cannot be set up as a bar against the co-tenants. In such case the possession of one tenant in common is in contemplation of law the possession of all the tenants in common. Such possession, however, may become adverse if the tenant in common by his acts and conduct disseizes his co-tenants by repudiating their title and claiming adversely to them.' " (9 Ill. 2d 441, 444-45, 137 N.E.2d 815, 818.)

There is no evidence in the record that the title of Mary Jones and the defendants was ever repudiated or that plaintiffs claimed ownership adversely to them. At most, as stated by the majority, the plaintiffs unintentionally neglected Mary and, after her death, the defendants.

For the foregoing reasons, I would reverse the decision of the trial court.