ALPHEUS ROBERTS *et al.* Appellants, *vs.* JOHN M. COX *et al.* Appellees.

*Opinion filed June 18, 1913.*

1. LIMITATIONS—*mere fact that a co-tenant in possession receives the rent and pays the taxes does not constitute adverse possession.* Mere possession by one tenant in common who receives the rents and profits and pays the taxes is not, of itself, sufficient to overcome the presumption of law that the possession of the one is the possession of all, and such facts do not constitute adverse possession.

2. SAME—*how possession of one tenant in common may become adverse to others.* The possession of one tenant in common may become adverse to his co-tenants by the assertion of an adverse right and title and notice that the premises are held adversely to the claim of the co-tenants; and such notice need not be a formal one, but may consist of overt acts of exclusive ownership of such a nature as to show the co-tenants that an adverse possession and disseizin are intended to be asserted.

3. SAME—*statute begins to run when possession of a co-tenant assumes an adverse character.* The possession of a co-tenant becomes adverse, as a matter of fact, if his acts are of such a character as to show that he claims exclusive ownership and denies all right or title in his co-tenants, and whenever his possession assumes that character the Statute of Limitations begins to run and an action by the other co-tenants will be barred after the statutory period has elapsed.

4. SAME—*when possession of life tenant is the possession of the remainder-men and their grantee.* Where a co-tenant who has been in the adverse and hostile possession as against the other co-

tenants dies leaving a will devising the land to his widow for life with remainder to his children, and the widow continues in the exclusive possession of the land, the possession of the widow is the possession of the remainder-men and their grantee.

5. SAME—*when the right of recovery by co-tenants is barred.* Where one co-tenant and his devisees have been in the adverse, open, hostile and exclusive possession of land for more than twenty years under a claim of title inconsistent with that of any other person, the right of his co-tenants to bring an action to recover their interest is barred, even though the co-tenant in possession when the other co-tenants became of age, some forty years before the action was begun, recognized that they had an interest in the title by requesting them to make a quit-claim deed to him.

APPEAL from the Circuit Court of Coles county; the Hon. W. B. SCHOLFIELD, Judge, presiding.

T. N. COFER, (ALBERT C. ANDERSON, guardian *ad litem*,) for appellants.

HENRY A. NEAL, and JAMES W. & EDWARD C. CRAIG, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellants filed their bill in the circuit court of Coles county against the appellees, claiming title to three-fourteenths of a tract of land containing forty acres and praying for partition of the same. The appellees defended under the twenty-year and seven-year Statutes of Limitation. The issues were referred to the master in chancery, who took the evidence and reported the same, with his recommendation that the bill be dismissed for want of equity, at the appellants' cost. The chancellor overruled exceptions to the report and entered a decree in accordance with the recommendation. From that decree this appeal was prosecuted.

The material facts are as follows: James W. Craig was the owner of the tract, and on October 26, 1853, con-

veyed it by warranty deed to John L. Roberts, who died intestate on January 3, 1854. Roberts left no descendant, and his heirs-at-law were his widow, his father and mother and five brothers. The widow inherited an undivided one-half and had dower in the other half, which, subject to the dower, descended to the father, mother and brothers in the proportions fixed by the statute. Three of the brothers were minors, aged four, six and eight years, respectively. On February 22, 1854, the widow, father, mother and two of the brothers, constituting the only adult heirs, re-conveyed the premises, by quit-claim deed, to James W. Craig, who took possession of the land and held exclusive possession until his death, in 1887. Since his death the land has been in the exclusive possession of his widow, who is now Eliza J. Ring, one of the defendants. James W. Craig left a will devising a life estate in the land to his widow with the remainder in fee to his two children, and the defendant John M. Cox acquired the remainder by conveyances. The three minors were each entitled to a one-fourteenth interest in the land as heirs-at-law of their father. One of them reached his majority in 1866 and died shortly afterward. Another became twenty-one years of age in 1868 and died in 1908. The remaining one reached his majority in 1871. The three-fourteenths claimed by the bill are the shares which descended to the minors on the death of John L. Roberts. About 1872 James W. Craig asked the complainant Alpheus Roberts, who had become twenty-one years of age in 1871, to give him a quit-claim deed for his interest. Alpheus replied that he had nothing to give him, and nothing further was said on the subject. The request was an acknowledgment that Alpheus had an interest in the legal title, but there was no offer to pay anything for the deed. Some time between 1870 and 1872 Craig asked a neighbor if he would see the two Roberts heirs who were then living and get them to give him a deed. One of them refused outright and Alpheus said he would not sign a deed unless

Craig paid him.  That statement being reported to Craig, he told the neighbor that he would do what was right with them, but nothing further was done.  After 1872 there was never any acknowledgment by Craig of any right, title or interest in the land, of any nature, in the Roberts heirs. Craig in his lifetime received the rents and profits, paid the taxes and treated the land in every respect as his own, and since his death his widow, the life tenant, has received the rents and profits and paid the taxes.  The parties lived near each other, and no claim was ever made of any interest in the land adverse to the title of Craig and his devisees until the bill was filed in this case, in 1911, when Craig and his devisees had been in exclusive possession about forty years with no acknowledgment of any other title.  There was no evidence under what circumstances the deed to Roberts, and the quit-claim deed from the widow and heirs soon afterward to Craig, were made.

By the quit-claim deed from the widow and adult heirs James W. Craig acquired the legal title to eleven-fourteenths of the tract of land as tenant in common with the three minors, each of whom had title to one-fourteenth. His possession was, in contemplation of law, the possession of all, and was not adverse to the other tenants in common unless it became so after the minors attained their majority. Mere possession by one tenant in common, who receives all the rents and profits and pays the taxes assessed against the property, no matter for how long a period, is not sufficient to overcome the presumption of law that the possession of one is the possession of all, and such facts, alone, do not constitute an adverse possession.  (*Stevens* v. *Wait,* 112 Ill. 544; *Comer* v. *Comer,* 119 id. 170; *McMahill* v. *Torrence,* 163 id. 277.)  The possession of one tenant in common may become adverse to his co-tenants by the assertion of an adverse right and title and notice that the premises are held adversely to the claim of the co-tenants.  Such notice need not be a formal one, directed to the co-tenants,

but may consist of overt acts of exclusive ownership of such a nature as to give notice to the co-tenants that an adverse possession and disseizin are intended to be asserted. If acts are depended upon to give the possession an adverse character, they must be of such an unequivocal character and of such a nature as by their own import to impart information to the co-tenants that their right and title are denied and the possession is held adversely to any claim they may have. (*Long* v. *Morrison,* 251 Ill. 143.) The possession of a co-tenant becomes adverse, as a matter of fact, if his acts are of such a character as to show that he claims exclusive ownership and denies all right or title in his co-tenants. (*Waterman Hall* v. *Waterman,* 220 Ill. 569; *Steele* v. *Steele,* 220 id. 318.) Whenever the possession of a co-tenant assumes that character the Statute of Limitations begins to run and an action will be barred when the statutory period has elapsed. James W. Craig and his devisees have been in the exclusive possession of the tract of land since 1854, and, at least since 1872, it has fulfilled all of the conditions of being actual, visible, open, notorious, hostile and exclusive under a claim of title inconsistent with that of any other person. The possession of the life tenant since the death of James W. Craig has been, in law, the possession of the remainder-men and their grantee. (*Mettler* v. *Miller,* 129 Ill. 630; *Weigel* v. *Green,* 218 id. 227, and 221 id. 187.) It was certainly understood by the other tenants in common living in the same vicinity, that James W. Craig and his devisees claimed exclusive ownership and denied all right or title in any other person. Any right of action by complainants was barred by the twenty-year Statute of Limitations before the bill was filed, and the court did not err in dismissing the bill for want of equity.

The decree is affirmed.         *Decree affirmed.*