---

(No. 14903.—Reversed and remanded.)
WILLIAM BROWN *et al.* Appellees, *vs.* JULIAN RAY *et al.* Appellants.

*Opinion filed December 16, 1924.*

1. WILLS—*what are "false words" in description of devise or conveyance.* False words, as applied to descriptions in wills or deeds, are misdescriptions of property devised or conveyed that are not applicable to any property owned or intended to be devised or conveyed by the testator or grantor.

2. SAME—*what are repugnant calls in a devise.* Words which describe lands owned by the testator but which conflict with other calls in the same description, so that one or the other will correctly describe the land intended to be devised but both cannot do so, constitute repugnant calls or descriptions.

3. SAME—*provision in a will cannot be altered to correct mistake—extrinsic evidence.* Wills are required to be in writing and no will can be reformed or changed because of a mistake made

therein by the testator; and extrinsic evidence is never admissible to alter the expressed meaning of the testator, nor can words be added to or taken from a will for that purpose.

4. SAME—*when oral evidence is admissible in construing will.* While oral evidence is not admissible when it will change the plain meaning of the will as expressed by the language used, such evidence may be admitted where it will put the court in a better position to understand the will.

5. SAME—*comparative values of calls in a description.* As a general rule a description of land by reference to visible and definite objects, whether natural or artificial, will prevail over a description by course and distance, but the latter will ordinarily prevail over a description by quantity.

6. SAME—*when description by quantity will prevail.* As a general rule a description of land by courses and distances will prevail over a description by quantity where the two are repugnant, as quantity is the least reliable of calls in a description; but where all the other calls are erroneous and impossible and the description by quantity expresses the testator's intention such description will prevail.

7. SAME—*when repugnant calls in description may be rejected.* Where all the calls of an entry, survey, deed or grant cannot be complied with because some are vague or repugnant, such vague or repugnant calls may be rejected if by so doing all the parts of the description will be reconciled and enough left to identify the land conveyed.

8. SAME—*when a description by quantity will be considered in construing devise—parol evidence.* In determining what land is included in a devise a description by quantity will be given due consideration, where the oral evidence properly received, in connection with the various provisions of the will, clearly and conclusively shows that the quantity call is the one intended or the one that expresses the testator's intention as gathered from the words of the will.

9. SAME—*when repugnant description of course and distance will be disregarded.* Where a testator, in devising adjoining tracts of land, gives the correct number of acres in each tract but recites east and west distances which will not produce the correct number of acres described in each tract, the court may disregard the incorrect description of course and distance where sufficient description remains to locate each tract as containing the number of acres intended by the testator.

10. LIMITATIONS—*when statute begins to run against remaindermen.* Remaindermen are not bound by any agreement of the

life tenant as to boundaries, and the Statute of Limitations does not begin to run against them until after the expiration of the life estate, as the remaindermen have no right of action for possession until the death of the life tenant.

11. SAME—*statute runs against heirs of owner in fee—minors.* The Statute of Limitations running against the owner in fee runs against his heirs at his death even though they are at such time minors, but minors, under the statute, have two years in which to begin an action after the disability of minority is removed.

12. SAME—*when remaindermen may tack their adverse possession to that of life tenant.* Where there is a dispute between two sets of heirs or devisees over the right to a certain tract of land because of a misdescription by the testator in his will, and the widow, claiming as life tenant under the will, takes possession of the tract, a second life tenant and remaindermen, who succeed to the possession of the widow, may tack their possession to that of the widow to defend their rights under the twenty-year Statute of Limitations, where the devise to the widow is described by reference to the devise to said remaindermen.

FARMER, J., took no part.

APPEAL from the Circuit Court of Fayette county; the Hon. THOMAS M. JETT, Judge, presiding.

ALBERT, WEBB & ALBERT, for appellants.

BROWN & BURNSIDE, for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

William Henninger was previous to his death the owner of a large amount of real estate and other property in Fayette county. He executed his will in 1879 and died January 20, 1882, leaving surviving him Mary J. Henninger, his widow, and Martha J. Davidson, Mary M. Brown, Sarah E. Rice, Illinois V. Farmer and Josephine E. Barkley, his daughters and only heirs-at-law. Mary M. Brown died in February, 1891, leaving surviving her husband, William Brown, (now deceased,) William Brown, Jr., and Isabelle McLain, as her children and only heirs-at-law, who were, respectively, thirty-four and thirty-nine years of age

when the bill in this case was filed. Martha J. Davidson died about April, 1891, leaving surviving John Davidson, her husband, (since deceased,) Mary Taylor, John Davidson, Martha Davidson and Grace Wright, as her only children and heirs-at-law. Josephine E. Barkley shortly after the death of testator was intermarried with J. D. Ray and has living only one child, Julian D. Ray, born in 1886. All the other daughters of the testator are now living. The will was duly probated in the county court of Fayette county, and the parts thereof material to the issues in this case are the following:

*First*—The last sentence of the provision for his widow in the first clause of the will, to-wit: "And in lieu of her right of dower and homestead in and to my real estate I give her a life estate in and to the home place where we now live, of 220 acres of land, the same as is hereinafter described as given to the children of Josephine Barkley, to have and hold with all the use, rents and profits thereof during her natural life."

*Second*—The third clause of the will, to-wit: "To the children born of the body of my daughter Mary Margaret Brown, share and share alike, at her death I give and bequeath of my real estate as follows: The west half of the southwest quarter of section 26, the west half of the northwest quarter of section 35, and 40 acres bounded as follows: Beginning at a point sixteen (16) rods east of the northeast corner of the southwest quarter of the southwest quarter of section twenty-six (26), running thence south 200 rods, thence west 16 rods, thence north 200 rods, thence east to the place of beginning; also 21 acres of land described as follows: Beginning at the northwest corner of the northwest quarter of the southwest quarter of section twenty-six (26), running thence west 15 rods, thence south 47 rods, thence west 65 rods, thence south 33 rods, thence east 80 rods, thence north 80 rods to the place of beginning,—all in township 6, north, range 1, west of the third

principal meridian, in Fayette county, containing in all
221 acres; and hereby giving to my said daughter her life
estate in said land, to use, occupy and enjoy, with right of
all rents and profits, during her natural life, by keeping the
taxes paid and place in repair."

*Third*—The clause of the will designated "Sixth,"
to-wit: "To the children born of the body of my daugh-
ter Josephine Ellen Barkley and their descendants, share
and share alike, at the death of said Josephine, the descend-
ants of each child taking its parent's part, if said parent be
dead, of my real estate, I give and bequeath the following:
The northwest quarter of the northeast quarter, the north
half of the southwest quarter of the northeast quarter, and
24 acres off of the east side of the northeast quarter of the
northwest quarter, and 12 acres out of the northeast cor-
ner of the southeast quarter of the northwest quarter, being
40 rods north and south and 64 rods east and west,—all in
section 35; also the south half of the southeast quarter and
the south half of the northeast quarter of the southeast
quarter, and 24 acres off of the east side of the southeast
quarter of the southwest quarter,—all in section 26, and all
in both sections being in township 6, north, range 1, west
of the third principal meridian, Fayette county, Illinois, this
being my home place, containing 220 acres. Said children
take said lands subject to a life estate of my wife, Mary
J. Henninger, and the right of my daughter Josephine to
the use, rents, issues and profits from the death of her
mother thence forward during her, Josephine's, natural
life, Mary J., my wife, to pay the tax while she enjoys
it and Josephine pay tax while she enjoys the use, rents
and profits."

*Fourth*—That portion of the twelfth clause of the will
by which the testator devised and bequeathed to his five
daughters aforesaid in equal parts, and if one be dead her
heirs to take her share, the residue of his estate, both real
and personal.

The testator named his two sons-in-law, William M. Farmer and William Brown, executors of his will. Similar specific devises of farm lands were given by the testator to his other daughters, Martha J. Davidson, Sarah E. Rice and Illinois V. Farmer, for their natural lives, with remainders to their children and their descendants.

William Brown, Jr., and Isabelle McLain, only surviving children of Mary M. Brown, deceased, in July, 1914, filed their bill in the circuit court of Fayette county alleging the facts above stated, and further alleging, in substance, that as tenants in common they are owners in fee simple of 20 acres of land owned by the testator at the time of his death and which he intended by his will to devise to them, with these boundaries: Beginning at a point 32 rods east of the northeast corner of the southwest quarter of the southwest quarter of section 26, thence south 200 rods, thence west 16 rods, thence north 200 rods, thence east 16 rods to the beginning; that by his will the testator did not intend by the sixth clause of his will to devise any portion of said 20 acres to Josephine E. Ray and her son, Julian D. Ray; that J. D. Ray, father of Julian D. Ray, has been in possession of said premises for the five years previous to the filing of the bill and received all issues and profits therefrom during that time, and that he should account to complainants for the reasonable rental value of the same for that period. They made parties defendant to the bill J. D. Ray, Julian D. Ray, Josephine E. Ray, Illinois V. Farmer, Sarah E. Rice, Mary Taylor, John Davidson, Grace Wright and Martha Davidson. The three Rays answered the bill and issues were joined thereon. The other defendants appear to have been duly served by publication and by process but defaults were taken against them. The prayer of the bill is that the will of the testator might be so construed as to devise to the complainants the 20 acres aforesaid and that no part thereof was devised by his will to Julian D. Ray and his mother; that the premises be par-

titioned or divided equally between them as tenants in common in fee, and for an accounting for the rents against J. D. Ray. The court entered a decree in accordance with the prayer of the bill, appointed commissioners to make partition of the same and postponed the accounting to a later time. The three Rays have prosecuted this appeal for a review of the decree.

The following plat shows the disputed 20-acre strip, also the lands devised to appellees and their mother and the lands devised to appellants, the Rays:

Sec. 26

Brown 21 A

Brown 80 A

Ray 20 A

Agreed Brown Land

Disputed Tract

Ray Land 24 A

Ray 80 A

Brown 80 A

20 A Agreed Brown Land

20 A Disputed

Agreed to be Ray 24 A

Ray 40 A

Agreed 12 A

Ray 20 A

Sec. 35

It will be observed that the 12-acre tract devised to the Ray heirs is in the sixth clause of the will described as being 40 rods north and south and 64 rods east and west, which would amount to 16 acres, and not 12 acres, as is

stated in the will. Therefore, if this tract is 64 rods long
east and west it takes four acres off of the south end of
the disputed 20-acre strip. We also call attention to the
fact that the sixth clause of the will states that the total
number of acres devised to the Rays is 220, and that in
reckoning the amount of acres in this tract the testator re-
garded the small tract as containing just 12 acres, and not
16 acres. It will be further observed that the third clause
of the will purports to devise to the Browns 221 acres, and
that according to the description of the land 20 acres more
are required to give them 221 acres, or the amount of land
in the disputed strip. It is a clear proposition, therefore,
that the testator, in devising the Brown tract, made a mis-
take in his calculation of the number of acres that he de-
vised to them or erred in describing by metes and bounds
the tract of land devised to them on their east boundary. It
is equally clear that he made a mistake in describing the
small tract devised to the Rays by the sixth clause of his
will, because that tract cannot be 40 rods north and south
and 64 rods east and west and contain just 12 acres. If it
contained just 12 acres it would be of the same dimensions,
east and west, as the 24-acre tract just north of it, or
48 rods east and west. It will be noted, also, that in the
first clause of the will the devise of the life estate to the
widow is of "the home place where we now live, of 220 acres
of land, the same as is hereinafter described as given to
the children of Josephine Barkley." Also that in the sixth
clause of the will, after describing all the lands devised to
the Rays, the testator closes with this statement: "this be-
ing my home place, containing 220 acres. Said children take
said lands subject to a life estate of my wife, Mary J. Hen-
ninger," etc.

Appellees' contention is that the mistake of the testator
was in describing the east tract of land devised to them
by a metes and bounds description, and not in stating the
amount of land to them in that description. They also con-

314—37

tend that testator made a mistake in the metes and bounds description of the small tract devised to appellants but that he correctly stated that it contained 12 acres. Appellants' contention is that the metes and bounds descriptions of those two tracts are correct and that the testator intended by his will to devise all the disputed strip to them. If we understand their position correctly, it is that the 20-acre strip is a part of the testator's home place, and that the testator devised it to them by the description "my home place," as is disclosed by the devise to the widow of the testator and also by the devise in the sixth clause of the will to the Rays. They also claim that they are entitled to this strip of 20 acres because they had occupied it by adverse possession for more than twenty-three years before this suit was brought.

The court by its decision found that it was the intention of the testator to devise to the Browns 221 acres of land and that he attempted to describe it by tracts, and that he did correctly describe it by tracts except the east tract devised to them, and that as to that tract it was his intention to devise 40 acres of land and not 20 acres, and that the 40 acres included the strip of 20 acres. The court then, by eliminating what it determined to be "false words" in the will, construed the will as devising 40 acres of land 200 rods long north and south by 32 rods east and west and lying directly east of and adjoining the southwest quarter of the southwest quarter of section 26, the northwest quarter of the northwest quarter and the north half of the southwest quarter of the northwest quarter of section 35. The court also by the same process of elimination of false words construed the sixth clause of the will as devising 12 acres of land to the Rays in this language: "and 12 acres out of the northeast corner of the southeast quarter of the northwest quarter, being 40 rods north and south, all in section 35."

The court was inaccurate in its use of the term "false words," but the question is, on the whole record, Does the evidence sustain the decree of the court? False words, as applied to descriptions in wills, deeds, etc., are really mis-descriptions of property devised or conveyed that are not applicable at all to any property owned or intended to be devised or conveyed by the testator or grantor. In the consideration of a will they are usually discussed in connection with a latent ambiguity discovered by means of oral evidence. The subject of false words and the rules for their elimination in wills have been frequently discussed by this court. (*Collins* v. *Capps*, 235 Ill. 560; *Decker* v. *Decker*, 121 id. 341; *Stevenson* v. *Stevenson*, 285 id. 486, and 297 id. 338.) In section 487 of his work on Wills, Paige in very apt language lays down the rule for the elimination of false words in wills and the rule as to whether or not the remaining description passes the property, and which we discussed in the case of *Stevenson* v. *Stevenson, supra.* His language is this: "Practically all the courts agree that if, after the false description or part of a description is discarded, there remains in the devise language sufficiently full and accurate to identify the subject of the gift with sufficient certainty, the property there indicated will pass. If, on the other hand, when the false description is eliminated from the will there is not enough left to afford a basis for identifying the subject of the gift, nothing can pass." This last conclusion was reached by the author by reason of the rule that in all those jurisdictions where wills are required to be in writing and in which wills cannot be reformed by reason of mistakes, nothing can be added to a will or taken from it for the purpose of changing the expressed intention of the testator, which intention must be determined, alone, by the provisions of his will after all false words or false descriptions are eliminated. False words in a will are not usually apparent on the face of it.

The descriptions or calls of the lands employed by the testator in this case and eliminated by the court are more properly termed "repugnant descriptions," "repugnant calls," or "equivocations." Repugnant calls or equivocations may or may not be possible and correct descriptions of lands that the testator owned. One or the other of such equivocations may correctly describe the land intended to be devised, but both cannot do so. The words eliminated in this case by the court are correct calls or descriptions of lands owned by the testator but they conflict with the other calls in the same descriptions. The real question for determination in this case then is, What is the correct rule for discovering and eliminating improper calls in descriptions, if that may be done? In the discussion of this subject we preface it with the positive statement that this court in its latest decisions has definitely determined that extrinsic evidence is never admissible for the purpose of varying the intent of the testator as expressed in the will itself, and that no words whatever can be added to or taken from a will that will have the effect of changing the plain meaning of the testator as expressed by his will. Our statute on wills requires every last will and testament to be in writing, signed by the testator and duly witnessed, and this court in its earliest decisions, as well as in the very latest, has held that no will can be reformed because of a mistake made therein by the testator. (*Kurtz* v. *Hibner,* 55 Ill. 514; *Starkweather* v. *American Bible Society,* 72 id. 50; *Bishop* v. *Morgan,* 82 id. 351; *Bingel* v. *Volz,* 142 id. 214; *Williams* v. *Williams,* 189 id. 500; *Vestal* v. *Garrett,* 197 id. 398; *Graves* v. *Rose,* 246 id. 76; *Clancy* v. *Clancy,* 250 id. 297; *Alford* v. *Bennett,* 279 id. 375; *Stevenson* v. *Stevenson, supra.*) An examination of the foregoing decisions will show that we have gone to the utmost limit in searching the provisions of a will to find words that will identify the object of the testator's bounty and the property devised by him and give effect to the same as he has expressed it, if

that can be done without the addition to or subtraction of words that will change the plain meaning of his will as he has expressed it, and whenever parol evidence, under proper rules of law announced, will put the court in a better position to understand the will such evidence will be permitted.

In this case the testator expressed his intention of disposing of all his property by his will in these preliminary words: "Being of sound mind and memory and being somewhat advanced in years, feeling the weakness of the tenure by which I hold mortal life, and desiring to make disposition of the means with which God has blessed me among my children and such others as I desire to enjoy my bounty, do make this my last will and testament." This declaration of the testator is equivalent to the statement that by the will he has devised all his lands to the devisees therein named, who are his daughters and their children, and on the face of the will is in favor of the court's decision that the disputed strip should go to the Browns under the description adopted by the court after eliminating the distance calls on the north and south lines of the east tract devised to them. The evidence that the testator did not intend to die intestate as to any of his real estate and that he intended to divide all of it among his daughters and their children is found directly in the will. The other evidence sustaining the court in its finding and construction of the will are the facts that the will states that the amount of land devised to the Browns is 221 acres and that it requires the disputed strip added to their land to make that amount of land, and that it states that the amount of land devised to the Rays is 220 acres of land and that the amount of land decreed them by the court is 220 acres; also, that the small tract devised to the Ray heirs in the sixth clause of the will, described as being 40 rods north and south and 64 rods east and west, which by that description would amount to 16 acres, is declared in the clause of the will to be 12 acres.

The foregoing facts, which are all disclosed by the will itself, tend very strongly to support the conclusion of the court that the quantity call of the east tract devised to the Browns in the third clause of the will, and which is given as 40 acres, is correct and that the east and west distance calls in that description are incorrect, and that the tract is 32 rods east and west by 200 rods north and south, and not 16 rods east and west by 200 rods north and south, as described by the testator. The same facts further support the court in its conclusion that the small tract devised to the Rays in the sixth clause of the will is a 12-acre tract, as stated by the testator in that clause, and that the mistake of the testator as to that tract is his further declaration that it is 64 rods in length east and west.

The only evidence in the record that tends to support the contention of the appellants that the court erred in the foregoing conclusion is that the disputed 20-acre strip of land is a part and parcel of the home farm of the testator, as testified by J. D. Ray, and the further fact that the testator in the first clause of his will stated that he devised his home place, "where we now live, of 220 acres, the same as is hereinafter described as given to the children of Josephine Barkley," to his widow for life, and that in the sixth clause of the will he devised 220 acres of land to the Rays, specifically describing it by separate tracts and further describing it as "my home place, containing 220 acres." He further states in his will that this 220 acres is devised to the Rays subject to a life estate of Mary J. Henninger, his widow. It was also testified by J. D. Ray that the tract of land devised to the Browns was known as the Snyder farm. It is therefore argued that inasmuch as the 20-acre tract in dispute was a part of the home place or home farm of the deceased, the will on its face, aided by the oral testimony aforesaid, shows clearly that it was the intention of the testator to devise the 20-acre strip in question to the widow

and the Rays. The evidence is not sufficient to support the contention of the appellants. The oral testimony does not disclose, as a matter of fact, what lands composed the home farm. It does not disclose the fact argued by appellants that the home farm contained exactly 220 acres. The oral evidence does not show whether or not all the land specifically described in the devise to the Ray heirs was a part of the home farm. It must be conceded that if the home tract contained more than 220 acres of land appellants would not be entitled to their claim that they were entitled to more than 220 acres of the home farm under the provisions of the will, as it specifically limits the amount of land devised to them to just 220 acres, both in the first clause of the will and in the sixth clause of the will. If the oral evidence had disclosed that there were exactly 220 acres of land in the home farm, and that the disputed tract was a part thereof, the claim of appellants would be much stronger.

We are also of the opinion that the contention of appellants that quantity calls in the description of property devised by will are in every instance controlled by course and distance calls is unsound. Generally speaking, course and distance will yield to known, visible and definite objects, whether natural or artificial, and will themselves control a call of quantity, in the description of land. This general rule is applicable, under proper circumstances, when applied to deeds, grants, wills, surveys, etc. The rule is by no means absolute or universal, as calls of a higher order may sometimes be made by mistake, as is well known. The relative weight to be given evidence or calls of a disputed boundary is ordinarily a question of law, as the law has simply fixed the relative weight or importance that is ordinarily to be given to each character of call. Quantity, in the law, is regarded as the lowest grade call in point of reliability, simply because of the fact that a quantity call is not ordinarily intended to be exact and to control the other calls in an instrument. But it must be conceded that instances might

arise in which the quantity call might be the very one intended and the only one to be depended upon as expressing the intention, by reason of the fact that the other calls are erroneous or impossible. Therefore the statement of this court in *Bishop* v. *Morgan, supra,* to the effect that quantity, in the description of land, is never allowed to control courses, distances, monuments, natural landmarks, etc., can only be accepted as the law of that case, and that it is not to be understood as a holding that to the general rule laid down there can be no exception. This subject is fully discussed in 9 Corpus Juris, 207-209, and in the cases there cited, and from which we have laid down the above rules. It is there expressly stated, in substance, that by the aid of other facts the weakest call may in a given case overcome a call of the highest dignity. It is also there laid down as a rule of law that where all the calls of an entry, survey, deed or grant cannot be complied with because some are vague or repugnant, such vague or repugnant calls may be rejected if by so doing all the parts of the description will be reconciled and enough left to identify the land conveyed. (See, also, *White* v. *Luning,* 93 U. S. 514; *Preston's Heirs* v. *Bowmar,* 6 Wheat. 580.) In the case of the interpretation of a will, it would, indeed, be strange law to hold that in every case the quantity call should be disregarded when the evidence in the will, and the oral evidence properly received in connection therewith, clearly and conclusively shows that the quantity call is the one intended or the one that expresses the testator's intention as gathered from the words of the will itself. Such cannot be the law, because it would destroy the first great rule in the interpretation of all wills, that the intention of the testator gathered within the four corners of his will is to be declared as his intention and his will.

Applying the foregoing rule by eliminating the repugnant and erroneous calls in this will, the description of the east tract devised to the Browns will be described by the testator

in this language: "And 40 acres bounded as follows: Beginning at a point east of the northeast corner of the southwest quarter of the southwest quarter of section twenty-six (26), running thence south 200 rods, thence west, thence north 200 rods, thence east to the place of beginning." By this description the land can be definitely located. While the distance calls east and west are not given in this description, they can be ascertained exactly by a mere matter of calculation, as the tract is 200 rods north and south and contains 40 acres. Applying the same rule of elimination to the 12-acre tract devised to the Rays, the description of that tract will be described by the testator in this language: "and 12 acres out of the northeast corner of the southeast quarter of the northwest quarter, being 40 rods north and south." This tract can also be located by any surveyor, although the length of the land east and west is not given in the description, for the reason that the surveyor by a mere matter of calculation would find the east and west distance to be 48 rods, and not 64 rods, as erroneously stated by the testator. The application of this rule to these two descriptions of land does not add any words to the will that are not used by the testator in describing the two tracts, and it only removes from it the erroneous east and west calls, which are shown by the will itself to be erroneous and repugnant to the quantity calls. It simply disregards that part of the will which the will itself shows to be incorrect and which does not express the testator's intent, and which, if retained in the will, would defeat his intent if we were to hold it as controlling the correct part of the will which does express his intent. The court in this case has substantially followed the correct rule for the elimination of an erroneous call that is repugnant to the quantity call,—the one intended by the testator,—and his ruling on this question is sustained.

The evidence in the record bearing on the question of title in the Rays by adverse possession is, that within less

than a year after the testator died, and while appellees were minors, the executors of the will, with the assent of Mrs. Brown, mother of appellees, and Mrs. Ray, and Mrs. Henninger, the widow, surveyed and established the dividing line between the lands devised to the Browns and the lands devised to the widow and the Rays. The line so established was the west line of the 20-acre strip in dispute in this case, and it was definitely settled by the parties aforesaid that the widow and the Rays were by the will entitled to the disputed strip of land, containing 20 acres. About a year after the testator died, by agreement between Mrs. Brown and her husband on the one side and the widow on the other, a fence was built on the west boundary of the disputed strip at the joint expense of Mrs. Brown and her husband and the widow, and the widow, Mrs. Henninger, at once took possession of the 20-acre strip, and she held possession of it under full claim of ownership until her death. The 20-acre tract, with the other lands devised to the widow and the Rays, was fenced from the time of the establishment of the west boundary and in the possession of the widow and of the Rays up to the bringing of this suit, under claim of ownership as against the entire world, it being the claim of the widow and the Rays that the 20-acre strip belonged to the widow during her life, and at her death Mrs. Ray was entitled to the same during her life, and that her son, Julian D. Ray, was entitled to the remainder in fee. By an arrangement with the widow, J. D. Ray, husband of Mrs. Ray, and Mrs. Ray, the latter two took possession of the strip of land shortly after it was fenced, as aforesaid, as tenants of the widow, and they remained in possession of the land as such tenants until the death of the widow, and they continued in the possession thereafter until the bringing of this suit, by virtue of the assumed right of Mrs. Ray to own and possess the same for her life. During their possession of the premises as tenants and by Mrs. Brown as owner they cleared and farmed parts of the 20-acre strip, and their possession un-

der their claims has been continuous and uninterrupted from the time the division fence was built until the death of Mrs. Brown and up to the bringing of this suit. During all that time Mrs. Brown recognized the claim of the widow and of the Rays as long as she lived, and the appellees in this suit since her death continued to recognize the claim of the widow and the Rays until shortly before this suit was brought, and William Brown, Jr., has at times since the death of his mother aided in keeping up the joint fence as the division fence.

Under the foregoing facts Mrs. Ray and Julian D. Ray, her son, have established complete title in themselves to the disputed strip by adverse possession, the same being a life estate in Mrs. Ray with the remainder in fee to Julian. Their possession was adverse to Mrs. Brown during her lifetime, and after her death they have held adverse possession for more than twenty-three years against appellees, who are devised the fee in said strip of land by the testator. It is true that appellees were in no way bound by the agreement of their father and mother in establishing the boundary line aforesaid, and the Statute of Limitations did not begin to run against them until the life estate of their mother was terminated, as they could have no right of action for possession until the death of their mother, the life tenant. (*Schroeder* v. *Bozarth,* 224 Ill. 310; *Weigel* v. *Green,* 218 id. 227; *Gibbs* v. *Gerdes,* 291 id. 490.) Under sections 1 and 9 of our Limitation act the twenty-year Statute of Limitations runs against a minor when his right of possession or right of action accrues, just the same as against an adult, the only difference being that under section 9 the minor has two years in which to begin his action after his or her disability of minority is removed. The statute had run against appellees more than twenty-three years when this suit was begun. Their right of action was therefore already barred at that time, as they had reached their respective majorities many years prior to that. There is no theory upon which

appellees could recover in this case. If further oral evidence were taken and such additional evidence should show that the Rays were entitled to the 20-acre strip, under the provisions of the will there could be no recovery. If such oral evidence should show that neither the Rays nor appellees could take the disputed strip under the will, in such case it would fall into the residuary clause and become the property of the daughters of the testator in fee under that clause. The Statute of Limitations, under the last supposition, would have begun running against Mrs. Brown as an owner in fee, and would have continued to run against her heirs, appellees, at her death although they were at such time minors. (*Beattie* v. *Whipple,* 154 Ill. 273.) There is therefore no reason whatever for remanding this cause to the circuit court for further investigation as to the facts concerning the home farm.

Some question is made in the argument as to the right of Mrs. Ray and Julian D. Ray to tack the possession of the widow and Mrs. Ray for the purpose of barring appellees under the twenty year Statute of Limitations. This raises a question that has never been passed on by this court in express terms. This court, however, clearly recognized the right of the remainderman to tack his possession to that of a life tenant for such purpose, although it was not declared as the law in so many words, in the case of *Roberts* v. *Cox,* 259 Ill. 232. The authorities are not uniform on this subject. The Supreme Court of Vermont, in *Austin* v. *Rutland Railroad Co.* 45 Vt. 215, appears to have held against this proposition, based on the ground that there can be no privity because the remainderman does not take from the life tenant. The Supreme Court of Massachusetts, in the case of *Haynes* v. *Boardman,* 119 Mass. 414, holds against the doctrine laid down in the Vermont case, and in answer to the contention that there could be no privity and no tacking of the two estates because the remainderman does not claim his title under the life tenant,

said: "The answer is that both claim under the same will by one title. The disseizin, which was commenced by the testatrix, is continued by each in accordance with that title and is referred by each only to the entry of the testatrix. There has been no loss of possession; no restoration of the seizin to the true owner; no new entry. The disseizin, which commenced with the testatrix, has been continuous in her devisees and establishes her title by lapse of time. It is plainly distinguished from a case of successive entries and new disseizins by different and independent parties." In the case now before us the facts are that the widow and the Rays were in possession claiming under the will, as before stated. They claimed to represent the entire title of the testator and to own the entire title, and even if the Browns were entitled to the possession they never were in possession as owners. The Massachusetts case was followed by the Supreme Court of Missouri in *Hickman* v. *Link,* 97 Mo. 482. The Supreme Court of Arkansas recognizes the same doctrine in *Johnson* v. *Johnson,* 106 Ark. 9. The Supreme Court of Maryland also lays down the same doctrine in. a case that is very much in point with the case before us, in *Hanson* v. *Johnson,* 62 Md. 25. The court in its decision said: "The estate claimed by him [the life tenant] was a freehold, and as there could only be one possession or seizin of the same estate at the same time, his possession inured to the benefit of the remainderman. His possession was in law the possession of the remainderman, and as such it represented the entire estate,—his own estate for life and the estate for George A. Hanson in remainder,—and his claim of title and possession being hostile to the title of appellants as heirs-at-law, his possession was, as against them, adverse and exclusive. The will was, it is true, invalid, but Dr. Wroth [the life tenant] having entered into possession claiming title under it, he would be estopped from denying the title of the remainderman claiming under the same instrument."

The holding of the Maryland court in the case last cited is in entire harmony with the holding of this court in the case of *Roberts* v. *Cox, supra,* and in accordance therewith we hold that both Mrs. Ray and Julian D. Ray, as life tenant and remainderman, had the right to tack the possession of the widow of the testator to that of Mrs. Ray for the purpose of defense of the twenty year Statute of Limitations.

The decree of the circuit court is reversed and the cause is remanded, with directions to enter a decree in favor of appellants and against appellees, in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE FARMER took no part in this decision.

(No. 16366.—Judgment affirmed.)
THE PEOPLE *ex rel.* Guy Hicks, County Collector, Appellee, *vs.* ELIZABETH LYCAN *et al.* Appellants.

*Opinion filed December 16, 1924.*