James E. Ingram brought an action to quiet title to a 25-foot strip of real estate, ownership of which was claimed simultaneously by Mr. Ingram and T.L. Harmon. The Honorable H.E. Holladay, Circuit Judge of St. Clair County, sitting without a jury, entered judgment for Mr. Ingram. We affirm.
In 1914, W.N. Maddox conveyed to T.W. Elliott a tract of real estate located in Section 26, Township 17, Range 3 east, in St. Clair County near the old town of Easonville. The conveyance described the property conveyed in the following manner:
 "Also a strip of land of 25 ft. in width running around the north and west side of said described W.N. Maddox lot and continuing west along and north of land lines dividing the S.E. qr. and N.E. qr. of S.E. qr. of Sec. 26 to a point 25 ft. north of the northwest corner of S.E. qr. of S.E. qr. of Sec. 26 thence to a point 25 ft. West of said corner. Containing two acres more or less and being Frac. Parts of the Northwest of Southwest of Sec. 25 and Northeast of Southeast and Northwest of Southeast of Sec. 26. . . ."
This two-acre tract, known as the "Lane," originally served as a means of access to a pecan orchard located in the north half of the southwest quarter of the southeast quarter of Section 26.
In 1924, there was a conveyance made by T.W. Elliott to J.K. Spradley. Included in *Page 413 
the deed was a conveyance, described in the following manner:
 "Also a strip of land 25 feet in width running around the North and West side of said described W.N. Maddox lot and containing one (1) acre, more or less, and being fractional parts of the Northwest of the Southwest of Section 25, and Northeast of Southeast and Northwest of Southeast of Section 26. . . ."
The deed from T.W. Elliott to J.K. Spradley, thus, specifically described only the eastern portion of the Lane, that portion defined as "running around the North and West side of the said described W.N. Maddox lot." It omitted the particular metes and bounds description of the western half of the Lane contained in the deed from Maddox to Elliott.
Sometime between 1924 and 1941, Mrs. J.K. Spradley deeded approximately one acre of land to the Willis family. The Willis acre was a narrow strip of land located along and north of the land line separating the southeast quarter of the southeast quarter from the northeast quarter of the southeast quarter of Section 26. The disputed western portion of the Lane, thus, lay to the south of, and adjacent to, the Willis acre. The Willises subsequently conveyed their land along the Lane to the W.D. Masters family, who, in 1959, deeded the acre to Mr. Harmon.
Meanwhile, in 1943, Mrs. J.K. Spradley gave to T.L. Harmon a deed conveying property described in terms virtually identical to those contained in the 1924 deed from Elliott to Spradley, with an express exception for the acre that she had previously conveyed to the Willis family. When Mr. Harmon eventually purchased the excepted area from the Masterses, he owned all of the land originally conveyed in the deed from T.W. Elliott to J.K. Spradley.
In July 1964, the water from Lake Logan Martin rose to cover the town of Easonville and most of the Lane. At that time, Mr. Harmon, who claimed to have used, for pasture, the eastern portion of the Lane since 1943 and the western portion since 1959, discontinued such use of the Lane and, thereafter, only occasionally visited the Lane to pick blackberries and to remove the vegetation from small portions of the Lane by the water's edge.
In 1971, Mavis Roper, James Ingram's sister, having purchased a tract of land to the south of and just across the lane from the former Masters lot, obtained a quitclaim deed to the western portion of the Lane from Lucille Elliott Maddox, the sole heir of T.W. Elliott. That deed described the Lane as follows:
 "Beginning at the Southwest corner of the one 
one-half acre W.N. Maddox Lot; thence North 25 feet to a point which is 25 feet north of the line between the NE 1/4 of the SE 1/4 the SE 1/4 of the SE 1/4 of Section 26, Township 17 South, Range 3 East; thence West parallel with said line to the line between the NE 1/4 of the SE 1/4 the NW 1/4 of the SE 1/4; thence 45° to the left to a point which is 25 feet west of the southeast corner of the NW 1/4 of the SE 1/4; thence east along the south line of the NW 1/4 of the SE 1/4 and along the south line of the NE 1/4 of the SE 1/4 to the W.N. Maddox lot; all in Section 26, Township 17 South, Range 3 East, St. Clair County, Alabama."
On August 12, 1988, Mavis Roper, in a deed describing the Lane in identical terms, quit-claimed her interest in the property to Mr. Ingram.
In August 1988, Mr. Ingram entered the Lane to clear away a growth of brush and trees, and he encountered Mr. Harmon. At that time, the two men engaged in a disagreement regarding the ownership of the Lane; Mr. Ingram subsequently brought this action to quiet title. Mr. Harmon filed a counterclaim, contending that he had obtained ownership either through his chain of title or through a period of adverse possession extending from 1959.
The parties presented evidence ore tenus in a trial spanning two days. At the conclusion of the trial, the judge, accompanied by the parties and their respective counsel, visually inspected the property. Thereafter, the trial judge entered judgment in favor of Mr. Ingram. Mr. Harmon moved for judgment notwithstanding the verdict, *Page 414 
reasserting the contentions he had raised in his counterclaim. The judge denied that motion and Mr. Harmon has appealedpro se.
 Chain of Title
Mr. Harmon grounds his documentary claim to the Lane on his deed from his predecessor in title, Mrs. Spradley. Mr. Ingram contends that when T.W. Elliott conveyed property to J.K. Spradley, he granted only the eastern portion of the Lane and retained the western portion for himself. The legal issue, therefore, is whether the language of conveyance in the deed from T.W. Elliott to J.K. Spradley includes the disputed western portion. We hold that it does not.
" 'The universal test in fixing a boundary line is, first, natural objects, such as rivers, trees, and other objects of nature; second, artificial marks that were placed on the ground by the surveyor; and third, course and distance.' " VanValkenburg v. Geron, 249 Ala. 467, 471, 31 So.2d 767, 770
(1947) (quoting Kyle v. Clinkscales, 22 S.W.2d 729, 731
(Tex.Civ.App. 1929)). Thus, calls in a deed that refer to natural monuments predominate over those that refer to artificial landmarks. References to artificial landmarks, in turn, prevail over references to courses and distance.
In this case, however, we are not aided by references to any of these things. The only language in the deed that is alleged to refer to the western portion of the Lane merely refers to fractional portions of the "Northeast [quarter] of Southeast [quarter] and Northwest [quarter] of Southeast [quarter] of Section 26." It refers to no monuments, either artificial or natural, recites no courses or distance, and fixes no southern or northern boundaries for the Lane. Indeed, the only evidence indicating that the grantor may have intended to grant a portion of the Lane west of the W.N. Maddox lot is the vague reference to the northwest quarter of the southeast quarter.
Ordinarily, references to the quantity of acreage conveyed are construed as merely cumulative to more definite descriptions such as metes and bounds. Self v. Petty,469 So.2d 568 (Ala. 1985); Hill v. Johnson, 214 Ala. 194, 106 So. 814
(1925). However, in order to ascertain the intent of the grantor when more definite calls are ambiguous, inconsistent, or nonexistent, a court may resort to references to the quantity of acreage expressed in the conveyance. Chapman Dewey Lumber Co. v. St. Francis Levee Dist., 232 U.S. 186,34 S.Ct. 297, 58 L.Ed. 564 (1914); Wisconsin Realty Co. v. Lull,177 Wis. 53, 187 N.W. 978 (1922). Indeed, where such ambiguity or inconsistency exists, the quantity call may control the case. Trustees of the Internal Improvement Fund v. Wetstone,222 So.2d 10 (Fla. 1969); Brown v. Ray, 314 Ill. 570,145 N.E. 676 (1924). We believe that this is such a case.
The conveyance from W.N. Maddox to T.W. Elliott assigned a quantity of two acres, "more or less," to the entire Lane, which included the disputed portion as it was enclosed by a line that "continu[ed] west along and north of land lines dividing the S.E. qr. and N.E. qr. of S.E. qr. of Sec. 26 to a point 25 ft. north of the northwest corner of S.E. qr. of S.E. qr. of Sec. 26 [and thence ran] to a point 25 ft. West of said corner." The subsequent conveyance from Elliott to Spradley, however, assigned to the Lane only one acre, "more or less," and described it merely as "running around the North and West side of said described W.N. Maddox lot." The one-acre quantity call in the deed to Spradley, coupled with the conspicuous omission of any specific reference to that disputed portion "continuing west" of the Maddox lot, such as appeared in the deed from Maddox to Elliott, provides some evidence that the grantor intended to retain that portion.
More significantly, a one-acre call seems inconsistent with a grant of the entire Lane as it is described in the deed from Maddox to Elliott, including not only the eastern portion that ran across both the north and west sides of the W.N. Maddox lot, but also the western portion that spanned the entire distance along the land line between two *Page 415 
quarter-quarter sections — a distance of a quarter of a mile. In fact, the length of both the western and eastern sections of the Lane, as specifically described in the deed from Maddox to Elliott, appers nearly double the length of the western portion alone.[1] We conclude, therefore, in the absence of more definite calls of conveyance, that T.W. Elliott retained the western portion of the Lane containing approximately one acre. Consequently, the disputed portion never passed into Mr. Harmon's chain of title.
This conclusion is not inconsistent with the trial judge's order quieting title in Mr. Ingram, where the order merely states that the "[p]laintiff claims title to said lands through his predecessors in title, Loyze S. Roper and Mavis I. Roper, Lucille Elliott Maddox and T.W. Elliott, and said predecessors in title first obtained title in and to said property in 1914." Although the record does not reveal the grounds on which the trial judge based his determination, we will not reverse that judgment where, as here, there is a valid basis for it.Hughes v. Allenstein, 514 So.2d 858 (Ala. 1987); Cole v.Racetrac Petroleum, Inc., 466 So.2d 93 (Ala. 1985).
 Adverse Possession
Mr. Harmon contends that, regardless of any uncertainties in the description of the Lane within the deeds forming his chain of title, he acquired ownership through adverse possession. Alabama recognizes two methods for acquiring title by adverse possession. First, title may be acquired pursuant to the provisions of Ala. Code 1975, § 6-5-200, which includes a 10-year period of limitations. Second, title may be acquired through adverse possession by prescription for a period of 20 years. Bergen v. Dixon, 527 So.2d 1274, 1277 (Ala. 1988);Tidwell v. Strickler, 457 So.2d 365 (Ala. 1984). Although the two methods differ in several respects, both require "actual, exclusive, open, notorious, and hostile possession under a claim of right" for the required period. Tidwell,457 So.2d at 368. The burden is upon the party claiming title by adverse possession to prove those common elements. Mardis v. Nichols,393 So.2d 976 (Ala. 1981).
In the instant case, the trial judge expressly found that Mr. Harmon's "acts of possession were not of sufficient length of time" to secure title by adverse possession. Mr. Harmon's possessory interest in the disputed portion of the Lane began in 1959 after the conveyance from W.D. Masters.[2] Mr. Harmon concedes that he discontinued regular use of the Lane after only five years, just before the water from Lake Logan Martin rose to cover much of the area.
The frequency and nature of Mr. Harmon's acts of possession after 1964 were matters of dispute at trial. Mr. Harmon testified that he had maintained a fence along the south side of the Lane, and made occasional visits to pick blackberries, to picnic, and to remove vegetation near the water. The court heard counter testimony tending to show that the Lane had been deserted and allowed to grow over with vegetation.
In a bench trial, the judge, as trier of fact, must weigh the evidence and judge the credibility of the witnesses.Feaster v. American Liberty Ins. Co., 410 So.2d 399 (Ala. 1982). Consequently, the "ore tenus rule, which on appeal accords a presumption of correctness to a trial court's findings, is particularly strong in boundary line disputes and adverse possession cases, and the presumption is further enhanced if the trial court personally views the property in dispute." Bell v. Jackson, 530 So.2d 42, 44 (Ala. 1988). If supported by credible evidence, the "trial court's conclusions will not *Page 416 
be disturbed on appeal unless plainly erroneous or manifestly unjust." Tidwell v. Strickler, 457 So.2d 365, 367 (Ala. 1984).
In this case, the trial judge, after two days of ore tenus
proceedings and a visit to the premises, determined that "at the very best, the possession claimed by the Defendant [was] scrambled possession." The record supports a finding that Mr. Harmon's use of the Lane after his five-year period of possession failed to constitute the actual, exclusive, open, notorious, and hostile possession necessary to acquire title by adverse possession.
On appeal, Mr. Harmon argues for the first time that his period of adverse possession should be "tacked" onto that of his predecessors in title. However, he failed to raise that issue in his pleadings, during trial, or in his motion for judgment notwithstanding the verdict. The trial judge was never confronted with the argument; therefore, it is not before us for review. See Totten v. Lighting Supply, Inc.,507 So.2d 502 (Ala. 1987); Mobile Wrecker Owners Ass'n, Inc. v. City ofMobile, 461 So.2d 1303 (Ala. 1984); Bechtel v. Crown CentralPetroleum Corp., 451 So.2d 793 (Ala. 1984).
For the foregoing reasons, we find no reason to reverse the judgment of the trial court quieting title in Mr. Ingram; that judgment is hereby affirmed.
AFFIRMED.
MADDOX, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] The location of the W.N. Maddox lot is undisputed. That lot lay in the northwest quarter of the southwest quarter of Section 25 and was bounded on the west by the land line running north and south dividing the southeast quarter of Section 26 from the southwest quarter of Section 25. See the Appendix to this opinion wherein Defendant's Exhibit Six and portions of Plaintiffs Exhibit One are reproduced.
[2] As a result of the conveyance from Mrs. Spradley in 1943, Mr. Harmon was in possession of that eastward portion of the Lane only, the portion that is not in dispute. *Page 417 
[EDITORS' NOTE: The diagram IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 418 
[EDITORS' NOTE: The diagram IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 419